## HESTER, WILSON, WHITE & Co. v. LUMPKIN.

1. Four persons constituting a firm in Tuscaloosa, afterwards established a new firm composed of themselves and eleven others, which was located under different names in Tuscaloosa, Mobile and New York. The old firm, before its dissolution, was indebted to the plaintiff, and to discharge this debt the acting partner of the house at Mobile, and who had been one of the old firm, drew a bill on the branch at New York, which was accepted by the acting partner there, who had also been one of the old firm. At the time the bill was drawn, the new firm was indebted to the members of the old firm in a large amount for goods sold, and at that time there stood also on the cash account of the house at Mobile, to the credit of the members of the old firm, a sum sufficient to cover the amount of the bill drawn: Held, that this was not the case of one partner giving the security of the firm for his individual debt, but that it was like any other case of indebtedness on the part of a firm, which any member of it could discharge by a payment in money, or by giving a security in its name.

2. A second deposition may be taken without leave of the Court first obtained for that purpose, but cannot be read to the jury but by leave of the Court, which would not be given but upon a proper showing, and also producing and confronting the first with the second deposition. Such permission is a matter of discretion, and cannot be reviewed in this Court.

Error to the Circuit Court of Tuscaloosa.

HARVARD LAW SCHOOL LIBRARY

Assumpsit by defendant in error against the plaintiffs in error as acceptors of a bill of exchange for twenty-seven hundred and twenty-nine dollars seventy-six cents, drawn on them by McCown, Hobson, Williams & Co. on the 13th March, 1839, at four months, in favor of Samuel B. Ewing.

To a declaration in the usual form, the defendants plead—

First—Non assumpsit.

Second—That the bill of exchange sued on was not their act, or accepted by their authority.

Third—That the bill was drawn by A. McCown, in the name of the firm of McCown, Hobson, Williams & Co. and accepted by Guilford R. Wilson, in the name of the firm of Hester, Wilson, White & Co.—that the bill was given by A. McCown in liquidation of a debt due by the firm of A. McCown & Co. to the said Robert Lumpkin—that the said firm of A. McCown & Co. was composed of Alexander McCown,

Charles M. Conrow, Benjamin S. Wilson and Guilford R. Wilson. That at the time the said bill was drawn and accepted as aforesaid, and at the time and before the said bill was endorsed to the said Robert Lumpkin, the said Ewing and the said Lumpkin respectively, had notice that the said bill was drawn and accepted for the debt of the said A. McCown & Co. and not upon a consideration to the said firm of McCown, Hobson, Williams & Co. or the said firm of Hester, Wilson, White & Co. and this the said defendants are ready to veify, &c,

These pleas are all sworn to, and issue being taken thereon, the plaintiff had a verdict and judgment.

By a bill of exceptions it appears that the plaintiff proved the drawing of the bill in the hand-writing of A. McCown, and its acceptance in the hand-writing of Guilford R. Wilson, and rested his cause.

The defendants then read in evidence a deposition of one George Haig, which had been taken by the plaintiff.

The plaintiff then offered to read the deposition of the same witness taken subsequently, to the reading of which the defendants objected, because it was taken without any special order or leave of the Court, and was not rebutting testimony but the Court overruled the objection and permitted it to be read. By this deposition, and a witness examined for the defendants, it was proved that the defendants in this suit, fifteen in number, were partners, doing business in Tuscaloosa under the name of Conrow, Ramsey & Co,—in Mobile under the name of McCown, Hobson, Williams & Co., and in the city of New York by the name of Hester, Wilson, White & Co. That previous to the formation of this Campany, there existed a mercantile concern, doing business in Tuscaloosa under the style of C. M. Conrow & Co. and in the city of Mobile under the name of A. McCown & Co. which consisted of A. McCown, Charles M. Conrow, Benjamin S. Wilson and Guilford R. Wilson, part of the members of the firm first above described. That before the formation of the new firm the old firm of A. McCown & Co. were indebted to the plaintiff, and in discharge of this debt the bill in question was drawn by the house in Mobile, on the house in New York. The bill was drawn by the direction of A. McCown and accepted by Guilford R. Wilson, who was

Hester, Wilson, White & Co. v. Lumpkin.

the acting partner of the New York branch. That at the time the bill was drawn there stood to the credit of Alexander McCown & Co. on the cash account of McCown, Hobson, Williams & Co. a sum sufficient to cover the amount of the bill of exchange, and in addition the firm of A. McCown & Co. then held the notes of McCown, Hobson, Williams & Co. for about thirty thousand dollars, given for the purchase of a stock of goods of the former at Tuscaloosa.

After the formation of the last mentioned firm, several of the partners were in Mobile, and frequently at the counting house of the Mobile concern, had access to its books, &c. A. McCown was the acting partner at Mobile.

Upon this testimony the defendants insisted that they were not liable on the bill, if the jury believed it was given for the debt of the old firm of A. McCown & Co. unless the bill was given and accepted with the knowledge and consent of the defendants who filed the special pleas, or unless they assented to the transaction after the bill was made and accepted, as aforesaid.

The Court charged the jury that the principle contended for by the defendants, was correct as a general rule, but that there were exceptions to it. That if there were large funds in the hands of the new firm, and the new firm tacitly recognized the debt, then the defendants would be liable. That if the jury were satisfied that the old firm deposited sufficient funds in the hands of the defendants, and the same were used by them, then the defendants became liable to pay the bill—to which the defendants excepted.

Judgment being rendered for the plaintiff, the defendants prosecute this writ, and assign for error—

1. The admission of the deposition of Haig in evidence.

2. The matters arising out of the bill of exceptions.

CRABB & COCHRAN and PECK, for plaintiff in error, cited 1 East, 48 ; 2 Ala. Rep. 502.

THORNTON, contra—Story on Partnership, 199, §133; 14 Wendell, 140; 8 Vesey, 540.

ORMOND, J.—It is admitted by the counsel for the plain-

tiff in error that a deposition may be taken more than once by leave of the court first obtained, and we are unable to perceive any material distinction between that case and the present, as the same reasons which would influence the Court to grant or refuse leave to retake the deposition, would operate to cause its admission or rejection when offered to be read, and the taking of it in advance would speed the trial of the cause. In either case, whether a motion was made for leave to retake the deposition, or to read it on the trial without such leave first obtained, the Court would take care that the party against whom it was offered to be taken or read, was not improperly prejudiced thereby—and that the right was not capriciously exercised. The subsequent deposition could also be confronted with the first, and any material departure therefrom, or contradiction therein, would impeach the credit of the witness. Indeed, it can scarcely be conceived that in any case such additional deposition could avail beyond what would be allowable on the second examination of a witness *viva voce,* who could not be examined a second time, without leave of the Court, and whose contradiction of his testimony first given in, or material departure from it, would destroy his credit with the jury. The whole matter is in the discretion of the Court, and cannot be revised on error.

The material question in the cause is, whether the bill is invalid, because, as alledged, given to discharge the individual debts of a part of the members of the firm, on which it was drawn and without the knowledge or consent of all the members of the firm.

The general principle, that one partner cannot, without the assent of his co-partners, give a security in the partnership name, for his individual debt, is universally acknowledged. [Mauldin v. The Branch Bank at Mobile, 2 Ala. Rep. 502.] That proposition was distinctly admitted by the Court below, in its charge to the jury, in this case—and the case put to the jury upon the implied assent of the new firm to pay this debt.

The facts of the case were, that the defendants in this suit, fifteen in number, were partners, doing business in Tuscaloosa, under the name of Conrow, Ramsey & Co.; in Mobile, under the name of McCown, Hobson, Williams & Co.; and in the

city of New York by the name of Hester, Wilson, White & Co. That previous to the formation of this Company, there existed a mercantile concern, doing business in Tuscaloosa of C. M. Conrow & Co. and in the city of Mobile of A. McCown & Co. which consisted of four persons who constituted a part of the firm first mentioned.    That before the formation of the new firm the old firm of A. McCown & Co. were indebted to the plaintiff, and in discharge of this debt, the bill in question was drawn by the house in Mobile, on the house in New York and accepted by the acting partner of the latter.    At the time the bill was drawn there stood to the credit of the old firm of A. McCown & Co. on the cash account of the Mobile house, a sum sufficient to cover the bill of exchange, and in addition the new firm was indebted to the old, about thirty thousand dollars, the purchase of a stock of goods, for which the persons composing the former held the notes of the latter.    A. McCown was the acting partner at Mobile.

Upon this testimony the Court admitted the general rule to be as stated, instructed the jury that if there were large funds in the hands of the new firm, and the new firm tacitly recognized the debt, then the defendants would be liable.    That if the old firm deposited sufficient funds in the hands of the defendants, and the same was used by them, then the defendants were liable to pay the bill.

From the proof it appears that the new firm was indebted to the old firm in a sum more than sufficient to pay the amount for which the bill was drawn, and we can perceive no possible objection to the drawing of the bill, as it was merely a mode of paying a debt which the house owed.    The apparent difficulty arises in this case from the fact, that the members of the old firm to whom the debt was due, were also members of the new firm, for if the new firm had been indebted to a stranger, it cannot be doubted for a moment that any member of it, had authority to discharge it by a payment in the money or effects of the firm or by drawing a bill upon its credit.    But although the new firm was composed in part of the members of the old firm, yet the liability of the former to the latter was as distinct as if the debt had been due to a stranger.

At the time this bill was drawn the Mobile branch of the

new firm had cash in its possession belonging to the old firm sufficient to pay this debt, and it cannot be doubted that the money could have been appropriated to its payment by the acting partner of the house. What difference is there then between this state of things and the course pursued. The right to draw the bill payable at a future time must rest on the same principle as the right to appropriate the money; for one partner can no more pay his debts by transferring the effects of the firm without the assent of his co-partners, than he can charge them, without their consent, by drawing a bill against the firm for that purpose, and in either case it would make no difference, whether the separate creditor had or had not knowledge of the misapplication of the partnership funds. [See the case of Rogers v. Batchelor, [12 Peters, 229,] in which the Court held the following language in reference to the right of one partner to pay his individual debt out of the partnership effects. "In the case of a partner paying his own separate debts out of the partnership funds, it is manifest that it is a violation of his duty and of the rights of his partners, unless they have assented to it. The act is an illegal conversion of the funds, and the separate creditor can have no better title to the funds than the partner himself had."

That McCown, the acting partner at Mobile, could have drawn the money from the possession of the firm and paid the debt for which this bill was drawn, cannot be controverted, and is indeed admitted in argument. But on what principle could this be done? On no other than that it was legitimate, because by receiving the money the house became indebted to those depositing it with them, and being a debt due by the firm, any member of it could discharge it.

It was also urged that although there might be cash dealings between the old and new firms, so as to create at a given time the relation of debtor and creditor between the two, that, in the nature of things this balance would fluctuate, and be constantly changing, and that therefore, although the new firm, might be indebted to the old when the bill was drawn, there might be no such indebtedness when the bill matured. But the presumption must be, as the contrary is not shown, that when the bill was drawn, it was carried to the debit of the old firm, and thus extinguished such indebtedness *pro tanto*. The

argument, if carried out would prove too much, as it would lead to the conclusion that a debt due by the firm could not be extinguished by a bill. The house, although established in three different places, is, in law, but one firm, and doubtless each of the branches kept the other apprised of their monied transactions. But if any inconvenience or difficulty should arise from this cause, it is one proceeding from the fact that the firm was located in three different places, an arrangement designed for the benefit of the firm, to enlarge the sphere of its operations and increase its credit, and if any inconveniences result from it, they must be borne by those interested in it and benefitted by it, and cannot be visited on strangers.

We have not thought it necessary to advert to the facts of the case, to establish the proposition that they raised the inference of an implied assent by the members of the new firm, who were not members of the old, to the drawing of this and similar bills in discharge of an indebtedness to the old firm, as was held in the case of Gainsevoort v. Williams, [14 Wendell, 133,] a case in some respects analogous to this, because, we think that this case, when stripped of its extraneous circumstances, is resolved into the simple proposition, whether each of the members of a firm have not the power, by the very terms of the partnership, to discharge its debts by giving a security in the name of the firm, or in any other manner.

As this is a proposition which cannot be controverted, it follows that there is no error in the judgment of the Court, and it is therefore affirmed.