# HERBERT *vs.* HANRICK.

1. The admission in evidence of a second deposition of the same witness, taken without a previous order, is a matter entirely within the discretion of the primary court, and is not revisable on error.

2. Where no injury to the plaintiff in error could possibly have resulted from the admission of improper evidence, it furnishes no ground of reversal.

3. A subsequent parol ratification by one partner of a deed for land, executed by his copartner in the name of each, is an adoption of the deed as his own, and renders it binding upon him from its date.

4. The Orphans' Court of the county in which a testator dies has jurisdiction to take the probate of his will of real estate, and its decree in such case, however erroneous, cannot be collaterally impeached by a stranger to the proceeding.

5. There is no error in permitting the plaintiff in an action of trespass to try title to give in evidence a notice served by him on the defendant, apprising him of his title and of his intention to claim rent.

6. The possession of one who claims title under a mortgagor is not adverse to the mortgagee, or those who derive title from him.

7. Whether a possession is in fact adverse is a question for the jury, and where there is any evidence from which the jury may infer it, an appellate court cannot undertake to say that an erroneous charge touching such possession has worked no injury on the ground of the failure of the proof to make out the possession adverse.

8. Adverse possession to avoid the deed of a disseisee need not be founded on colour of title: a *bona fide* claim of title, asserted in a manner so notorious and distinct as to charge the vendor with notice, is all that is necessary.

9. Whatever is sufficient to put a party on inquiry, must be regarded as sufficient to charge him with notice.

10. The proof or acknowledgment of a deed of mortgage, without reference to the *form* of the probate, is all that is necessary to admit it to record. (Hobson v. Kissam, 8 Ala. 357, re-affirmed.)

11. The regularity and validity of a trustee's sale, and of the purchase under it, cannot be questioned by a stranger to the deed.

Error to the Circuit Court of Montgomery. Tried before the Hon. John D. Phelan.

This was an action of trespass to try titles to three lots of ground in the city of Montgomery, designated by the numbers 15, 16 and 17, on the south side of Monroe street, and was instituted by the defendant against plaintiff in error. The

plaintiff in the court below introduced as evidence a patent from the United States to John Falconer for 160 acres of land, which embraced the lots in controversy, and a deed from the patentee to Joseph W. Bibb, deceased, for lots 15 and 16 —a deed from the patentee to Joseph Williams for lot 17— one from Joseph to Thomas Williams—one (*unrecorded*) from Thomas Williams to William Ross and Jonathan Crane, who were merchants and copartners—one from Ross & Crane, executed by Crane for himself and Ross, to Geo. Whitman—one from Whitman -to Victor F. Mongin—one from Mongin to said Joseph W. Bibb. Having shown title in said Bibb to all the lots, the plaintiff then gave in evidence the record of the will of said Bibb, by which authority was given to his executor, Fleming Freeman, to sell his real estate—a deed for said lots from said executor to said Geo. Whitman—one from Whitman to Jacob D. Worsham—a mortgage from Worsham to Whitman—and a deed from Whitman to the plaintiff, purporting to be founded on a sale made under a power contained in said mortgage, and which deed bears date the 26th January 1841. John D. Ross, a subscribing witness to the deed from Ross and Crane to Whitman, was examined under a commission by the plaintiff to prove its execution, and it appearing from his answers that said deed was executed by Crane for himself and under a power of attorney from Ross, which the witness stated was left among the papers of Ross, Strang & Co., of which firm the witness was a member, the plaintiff sued out a second commission, without a previous order of court, to prove the loss and contents of the power of attorney. The interrogatories attached to this second commission were crossed by the defendant without objection to the issuance of the commission, but when the deposition was offered to be read to the jury, he moved for the first time to suppress it, which motion the court overruled. Other questions raised by the defendant in respect to the deposition are sufficiently noticed in the opinion of the court. It was proven by this witness, and by said William . Ross also, that the latter, when he was informed of what Crane had done, approved and ratified it, and in 1843 appeared before a notary public and formally acknowledged the deed. The defendant objected to the record of the will of Bibb, which was offered in evi-

dence on the probate merely, because, although attested by three witnesses, it was admitted to probate on the oath of one witness alone, and for the further reason that the Orphans' Court has no jurisdiction in the matter of the probate of wills of real estate, but the court overruled the objection. The plaintiff, by permission of the court and against the defendant's objection, to fix the date from which the rent commenced, read to the jury a notice served by him on the defendant soon after his purchase from Whitman, informing him of said purchase and that he should look to him for the rent of the premises.— The defendant proved possession in himself of the lots since 1839, and introduced in evidence a deed for lot 17 from Thomas Williams to Charlotte Dexter, dated 21st May 1841, long subsequent to that from said Williams to Ross & Crane, and a deed from her to Andrew Dexter in trust for the sole and separate use of the defendant's wife and her children. Andrew Dexter proved the consideration of this deed from Williams to Charlotte Dexter, and stated upon his examination that he had made the purchase from Williams in the name of Charlotte Dexter at the request of the defendant, which was the reason why the trust deed was executed by said Charlotte; that he searched the records before the purchase without finding any deed from said Williams to any person, but saw the record of the deed from Ross & Crane to Whitman, and upon inquiry of Williams, whether he had parted with his right to the property, was informed by him that he had not made a deed to Ross & Crane, but that they had some claim to it.— The defendant also read in evidence a deed from Worsham to one McGehee for all the lots, which bears date subsequently to the mortgage from the former to Whitman, and a quit-claim deed from McGehee to one Taliaferro, now deceased, dated the 1st May 1840, and offered to prove that Taliaferro stated he had purchased the lots for the defendant's wife and children, but the proof having shown that the purchase of Taliaferro was on a credit, and that he gave his note with one Ware as his security for the purchase money, the latter of whom has paid it since the death of Taliaferro, the court excluded the evidence thus offered.

The court gave three affirmative charges to the jury, the *second* of which was, "that to constitute adverse possession in

the defendant, he must hold or claim under a colour of title; otherwise his possession would not be adverse." The defendant asked the court to charge the jury, among other matters, " that the deed from Thomas Williams to Ross & Crane, not being recorded, is not evidence of notice to any one of their claim, and unless there be proof of *actual* notice of the purchase by Ross & Crane, either to the defendant or his agent, before his purchase and the payment of the purchase money, then the defendant is an innocent purchaser for valuable consideration without notice, &c. ;" also, " that the probate of the mortgage from Worsham to Whitman did not authorise its record, and the record is consequently not notice to any one,"—both of which charges were refused. Charges were likewise requested and refused, tending to impeach the fairness of the sale under the mortgage, and of the plaintiff's purchase thereat.

To the several rulings of the court, to the charges given and to the refusals to charge as requested, the defendant excepted, and now assigns each as error.

T. & J. WILLIAMS, for plaintiff in error:

1. The court should not have admitted the second deposition of Jno. D. Ross, as it was taken without an order of court.

2. The court should have suppressed so much of the deposition of the same witness as relates to the power of attorney from Ross to Crane: because, 1st—the interrogatory did not call for such an answer; 2d—it was the admission of parol proof of a writing, without a previous predicate; 3d—it was allowing the witness to fix the character of the instrument without giving its contents.

3. The court should have excluded all the proof in reference to the power of attorney: because, 1st—it did not authorise the making of a deed for land; 2d—the ratification by Wm. Ross was not until 1843, long after plaintiff's purchase; 3d— until this ratification the fee was in Ross and no one else could convey it. Fripps v. McGehee, 5 Port. 413, and cases cited.

4. The record of Bibb's will was improperly admitted as evidence, because; 1st—a will can only be proven in solemn form in chancery. Johnson, et al. v. Glascock and wife, 2

Herbert v. Hanrick.

Ala. 233; 2d—the Judge of the Orphans' Court has no jurisdiction to take the probate of wills of real estate. 2 Rand. 192; 3d—it was admitted to probate on the oath of one witness alone.

5. The declaration of Taliaferro should not have been excluded, because, 1st—a trust may be raised by parol; 2d—it showed that the defendant claimed as purchaser, and that his possession was adverse to plaintiff's vendor.

6. The court erred in permitting the plaintiff to read to the jury the notice given by him to the defendant.

7. The court erred in its second charge to the jury. Colour of title is not necessary to an adverse possession. Gray v. Moffit, 2 Bibb, 206; 2 Penn. Rep. 452; 1 Root's Rep. 50, 68, 151, 412; 7 Sergt. & R. 177; 10 Serg. & R. 334; Lamar v. Minter, 13 Ala. 31. Whether it be adverse or not is a question of fact for the jury.

8. The deed of Ross & Crane not having been recorded and Charlotte Dexter or her agent having no actual notice of it, the defendant's wife and children were entitled to the protection of *bona fide* purchasers without notice, and the court should have given the first charge requested.

9. The mortgage from Worsham to Whitman, being recorded upon an insufficient probate, was void,—Brock v. Headen, 13 Ala. 375; Shelton v. Armor, et al. 13 Ala. 652; McCaskie v. Amarine, 12 Ala. 22; Sewell v. Glidden 1 Ala. 52; Magee v. Carpenter, 4 Ala. 469; and the second charge requested should therefore have been given.

10. The charges requested in reference to the unfairness of the sale by the trustee and purchase by the plaintiff were proper under the evidence and should not have been refused.

BELSER & HARRIS, & ELMORE, for the defendant in error:

1. It is a matter of discretion with the court to permit a second deposition of a witness to be read, and cannot be reviewed in this court. Hester, Wilson & White v. Lumpkin, 4 Ala. 509. The motion was made after the trial had commenced and was therefore properly refused—but even if improper, the refusal cannot be assigned as error. Cullum v. Smith & Conkling, 6 Ala. 625; Wall v. Williams, 11 ib. 826; Spence v. Mitchell, 9 ib. 744. 2d. The testimony of the wit-

42

ness in answer to the second direct interrogatory was respon-
sive. But if not, no injury has resulted to the plaintiff in er-
ror by the admission of the evidence, because, in a subsequent
part of the testimony it was proved that Ross was informed
of the execution of the deed, ratified the act and acknowledg-
ed the deed in writing, and the power was proven to have
been lost. Garrett v. Rhea, adm'r. 9 Ala. 134; Fant v. Cath-
cart, 8 'ib. 726; Strawbridge v. Spann, 8 ib. 820; Haynes v.
Crutchfield, 9 ib. 189; Early v. Dye & Dye, 14 ib. 158. 3d.
The probate of a will in the proper county is final and con-
clusive as to its validity, and cannot be collaterally impeached.
Darrington v. Borland, 3 Porter, 333; 2 Greenl. Ev. § 672,
p. 558, and cases cited in note; Tarver v. Tarver, et al. 9 Pet.
180; 1 Story's Rep. 547; 8 N. Hamp. 124; 2 Taylor's N. C.
13; 8 Yerger, 186; 5 Monroe, 42; Clay's Digest, § 10, 598;
ib. §s 21, 22, 23, 24, 301; ib. §s 26, 27, (last clause) 302; John-
son, et al. v. Glascock and wife, 2 Ala. 233. A sole executor
can sell lands devised to be sold.—Clay's Digest § 14, 598.
4. Notice of the purchase by Hanrick, even if unnecessary,
could not prejudice the defendant in the court below. Haynes
v. Crutchfield, 7 Ala. 189; Early v. Dye & Dye, 14 ib. 158.
5th. The declarations of Taliaferro were inadmissible—they
were irrelevant and tended to vary the deed. 1 Greenl. Ev.
§ 52, 59; ib. § 278, 315; Jackson, ex dem. v. Frost, 5 Cowen,
346; Lamar v. Minter, 13 Ala. 38. 6th. The mortgagor and
those who claim under him cannot set up an adverse posses-
sion to the mortgagee or his assignees. Wiswall v. Ross &
Earle, 4 Porter, 328; 1 Johns. Ch. 575; 3 Vern. 271; 1 Mc-
Cord's Ch. 397; 5 Cow. 173; 4 Cranch. 419; 3 Dess. 408;
Wilson v. Watkins, 3. Pet. 47; Foster v. Goree, 5 Ala. 424; 2
Fonb. Eq. 152. 7th. The court will not reverse for an im-
proper charge, if no injury has resulted. 9 Porter, 403; 1 Ala.
452; 3 ib. 419; 4 ib. 367. 8th. To constitute an adverse pos-
session, it must be bona fide under colour of title, and connec-
ted with the title. Jackson, ex dem. v. Todd, 2 Carne's Rep.
183; Jackson, ex dem. v. Ellis, 13 Johnson, 118; Smith, ex dem.
v. Bentes, 9 ib. 174; Jackson, ex dem. v. —— 18 ib. 40;
Jackson, ex dem. v. Newton, 18 ib. 353; La Frembers v.
Jackson, 8 Cowen, 589; Jackson, ex dem. v. Ten Eyck, 5 ib.
346; Livingston v. Penn. Iron Co. 9 Wend. 511; 1 Lomax

Herbert v. Hanrick.

Digest, 622; Jackson v. Jackson, 5 Cowen, 173; Jackson v. Hill, 5 Wend. 532; Jackson v. Thomas, 16 Johnson, 293. 9th. There was no evidence that Herbert, or those under whom he held, were purchasers without notice, but the court was bound from the evidence to declare that they bought with notice. 10th. The mortgage having been recorded within the time required by statute, the defect of the probate cannot impair the validity of the record as notice. Hobson v. Kissam, 8 Ala. 357. 11th. The irregularities in a sale by a trustee cannot be questioned by any but a party to the deed. Gray v. Colgin, 11 Ala. 519; Brown v. Lipscomb, 9 Porter, 472; Foster v. Goree, 5 Ala. 424.

CHILTON, J.—We will dispose of the several assignments of error in the order in which the plaintiff's counsel presents them for our consideration.

1. The allowing of the second deposition of John D. Ross to be read to the jury was a matter within the discretion of the judge trying the cause. We are not to presume that the court exercised this discretion capriciously, but on the contrary, that the proof was properly admitted. The matter being one of discretion, is not revisable on error, and consequently the first and second assignments of error cannot be allowed to prevail. Hester, Wilson, White & Co. v. Lumpkin, 4 Ala. Rep. 509, 512.

2. The second objection is, that the court should have suppressed so much of the deposition of John D. Ross in his answer to the second direct interrogatory as went to show that a deed from Ross & Crane to Whitman for a portion of the premises sued for was executed by virtue of a power of attorney. It is insisted that the inquiry made by the interrogatory has no reference to a power of attorney—also, that the witness was giving parol proof of it without its production, and that allowing the witness to speak of it as a power of attorney was permitting him to fix its character and legal effect, without giving its contents, so that the court might determine whether it was in fact the instrument thus designated in legal parlance. The interrogatory reads as follows—"Look upon the deed now shown you at the time of your examination, and then state whether or no you are the subscribing witness

to the same? If yea, state when and where said deed was executed, and who executed the same, and who was called upon to witness the execution thereof?" In response to this interrogatory, the witness answered, that he saw the deed executed the 17th January 1831, the day it bears date—that himself and one E. R. Robinson were subscribing witnesses; "that Jonathan Crane signed for himself and also for William Ross *under a power of attorney.*" The point in issue, as respects the proof here objected to, was the execution of the deed by William Ross. The witness was called upon to prove its execution, he having subscribed it as one of the witnesses. We think it was very proper for the witness to state the manner of its execution—that Ross did not sign it himself personally, but by Crane, who acted under a power of attorney. The answer connects itself with the interrogatory sufficiently in our opinion, to render it proper. Besides, it is the settled rule of practice, that a motion will not be entertained to suppress a deposition, sprung for the first time upon the trial, when such deposition has been taken in conformity to the statutes. Cullum v. Smith & Conklin, 6 Ala. Rep. 625; Carter v. Manning & Jackson, 7 ib. 851 ; Spence v. Mitchell, 9 ib. 744; Wall v. Williamson, 11 ib. 833–4. In the latter case, it is said to be the duty of the court to protect the jury against the admission of improper evidence, when it is objected to, no matter through what medium it is offered. This is true of evidence which is inadmissible ; but where the witness is competent, his evidence taken according to the statute, and the facts deposed to are admissible. Is it not too late after the party goes to trial to suppress any material part of the deposition? Does not the same reason, which forbids the suppression of the whole, equally apply to all the parts of which it is composed? But it is said the proof was illegal in itself, and and under the rule above laid down, liable to be excluded at any time. In an after part of the deposition, it is, we think, substantially shown that the power of attorney was lost. The witness says it was, the last time he saw it, among the papers of Ross, Strang & Co.; that he destroyed said papers, deeming them worthless, and presumes that he destroyed this paper also. It is further made to appear that Ross ratified fully the act of Crane, so that no injury from its admission could pos-

sibly have resulted to the plaintiff in error. The cases of Dye v Earley, 14 Ala. Rep. 158, and Garrett v. Rhea, adm'r, 9 ib. 134, are in point to show, that the admission of such evidence furnishes no reason for reversing the judgment.

3. It is objected in the third place, that the court should have excluded all the proof in relation to the power of attorney, and the ratification by Ross of the act of his partner Crane, in executing the deed to Whitman, because the ratification did not take place until 1843, whereas the defendant in error, (Hanrick,) acquired his title in 1841. This view cannot be sustained—conceding that the general power of attorney given by Ross to Crane, to transact all business relating to the affairs of the firm in his absence, did not authorise the execution of a deed in his name, conveying real estate, still the subsequent ratification of the act by Ross relates back, and makes the deed effectual against him from its date. Wood v. McCain, 7 Ala. Rep. 800, 806, and authorities cited. I am aware of the rule which requires that the ratification of an unauthorised deed made in the name of the principal, must be under seal, but the strictness of this common law rule has been relaxed, when applied to commercial copartnerships and other associations of individuals, operating with joint funds for a common profit. In Green v. Seaton & Bunker, 1 Hall, 262, the authorities are very ably reviewed, and the result deducible from them is strictly stated to be, that although an absent partner is not bound by the deed executed for him by his copartner without his previous authority or permission, or his subsequent assent and adoption, yet such subsequent adoption of the seal as his own will impart efficacy to the instrument as his deed, and the previous authority or subsequent ratification may be by parol—ib. 270 ; Darst, et al. v. Roth, 4 Wash. C. C. Rep. 471; Ball v. Dunsterville, 4 Term Rep. 313; Lord Lovelace's case, Sir Wm. Jones' Rep. 268; Skinner v. Dayton, et al. 5 Johns. Ch. Rep. 361, S. C.; 19 Johns. Rep. 513 ; Cady v. Shepherd, 11 Pick. Rep. 400. In the case last cited, the action was upon a covenant under seal, executed in the firm name by one of the partners without the authority of the other in writing. The plaintiff offered proof tending to show a previous assent and also a ratification of the act by parol declarations, and the question was raised whether such parol

ratification made it the deed of both the partners. The court after considering the authorities at some length, held, that a partner may bind his co-partner by a contract under seal made in the name and for the use of the firm in the course of the partnership business, provided the co-partner assents to the contract previously to its execution or afterwards ratifies and adopts it. See also as to the retroactive effect of the subsequent ratification of the contract—Randall v. Van Vetchen, et al. 19 John. Rep. 60; Bank Columbia v. Patterson, 7 Cranch, 297. Story on Part. 180 asserts the general doctrine to be, that a prior authority, or a subsequent ratification, either express or implied, verbal or written, is sufficient to establish the deed as the deed of the firm, and binding upon it as such. See also note 1, ib. The same learned author, in his work on Agency § 239, says, where a principal upon a full knowledge of all the circumstances of the case, deliberately ratifies the acts of his agent, he will be bound thereby as fully to all intents and purposes, as if he had originally given him direct authority in the premises to the extent which his acts &c. reach; the maxim being *omnis ratihabitio retrotrahitur et mandato priori aequiparatur*—ib. § 445; 1 How. Rep. 56. The foregoing authorities we think are quite sufficient to show that the court properly refused to exclude from the jury the proof in respect to the execution of the deed under the power of attorney from Ross, he having ratified the act of Crane, his copartner, by the most unequivocal evidence of his approbation, to wit, his acknowledgement of the deed before a notary public for the purpose of registration.

4. It appears from the bill of exceptions, that one Falconer held the patent from the United States for the land, embracing the lots in question; that he conveyed two of the lots, 15 and 16, to Joseph W. Bibb, on the 4th January 1833, and that lot 17 was conveyed by said Falconer to Joseph Williams on the 20th February 1821, who conveyed to Thomas Williams 11th May 1821, who conveyed to Ross & Crane 20th May 1828, who conveyed, as before stated, to Geo. Whitman, 17th January 1831, who conveyed to Victor F. Mongin 4th May 1831, and he to said Bibb the 1st January 1833. The title to all the lots sued for having been traced to Bibb, it was proposed to show that Fleming Freeman, as executor of said Bibb, on

the 17th March 1834, conveyed them, as such executor, by virtue of the powers confered on him by the will of said Bibb, to one Whitman, under whom the defendant in error claimed title. To show the authority of Freeman to execute such conveyance, the plaintiff below offered the record of the last will and testament of said Bibb, showing that a will was executed by him, 7th July 1833, and although regularly attested by three witnesses, had been admitted to probate by the Orphans' Court of Montgomery county, where said testator died, upon the oath of one witness only. This will, being offered upon the probate without other proof, was objected to by the counsel of Herbert, but the objection was overruled, and it is here insisted: 1st—that the Judge of the Orphans' Court has no jurisdiction to take the probate of the wills of real estate; 2d— that one witness is not sufficient to establish its execution. As to the first of these objections, it is sufficient to say that the 1st and 12th sections of the act of 1806 (Clay's Dig. 300, § 21, and 598, § 10,) confer upon the Orphans' Court the power and jurisdiction of admitting wills to probate. The same jurisdiction is confered by the act of 1821, (after the adoption of the constitution,) which declares that the Judge of each Orphans' Court shall have power within the county to take the probate of wills, grant and repeal letters testamentary, &c.— Clay's Dig. 303, § 31. The court having jurisdiction, it follows that the second position, if it would avail upon a direct application to set aside the probate of the will, cannot be sustained, as it amounts to an attempt on the part of an entire stranger to the proceeding collaterally to impeach it. It may safely be stated as an undeniable proposition of law, that the judgment or decree of the Orphans' Court, which with us has cognisance of the probate of wills, both of personal and real estate, is final and conclusive upon all persons until it is directly impeached as provided for by law. Such was the decision of this court in McGrew v. McGrew, 1 Stew. & Port. 30, and Hilliard & Wife v. Benford's Heirs et al. 10 Ala. Rep. 977–983; see also Cole v. Conolly, at the present term; 2 Greenl. Ev. 630-1, § 672, notes 1, 2—where the authorities are cited. It is not objected in this case, that the will has not the number of witnesses required to give it validity. On the contrary, the bill of exceptions certifies that it was executed

in the presence of three witnesses, but was sdmitted to pro-
bate on the oath of one. The objection is not that the will is
void, but that the probate is irregular. The statute affords
any party injured by such irregularity the right to an appeal,
&c., and in our judgment, we should establish a most ruinous
precedent to hold that even after the expiration of five years,
when by the terms of the statute the probate becomes final
and conclusive, and cannot be impeached by a direct applica-
tion to chancery by a party interested, a mere stranger may
collaterally impeach it. But we need not dwell longer on
this point, inasmuch as it is very clear that however erroneous
the decree may be, having been made by a court of competent
jurisdiction, it is valid until impeached or set aside, and can-
not be collaterally called in question. See Apperson v. Cot-
trell, 3 Por. 51. We need not therefore examine as to the
regularity of the probate.—See, however, 8 Ala. 538.

5. There was no error in permitting the plaintiff below to
read to the jury the notice which he caused to be served on
the defendant, advising him of his purchase and that he should
look to him for the rent, &c. The party could not possibly
have been prejudiced by its admission, and although it was
unnecessary, it was not wholly irrelevant. This court has sev-
eral times decided that the admission of notices similar in
their character was no ground of error.—Haynes v. Crutch-
field, 7 Ala. Rep. 189; Easley v. Dye & Dye, 14 Ala. 158.

6. We are informed by the bill of exceptions, that the de-
fendant below produced a deed from Thomas Williams to
Charlotte Dexter, dated 21st May 1841, for lot number 17,
and also a deed from said Charlotte to Andrew Dexter in trust
for the sole and separate use of Mrs. Herbert, the wife of said
defendant, dated 28th June 1841. He also proved that he
was in possession of said lots before either of these deeds was
executed. Said Herbert then introduced a quit-claim deed
for lots number 15, 16 and 17, dated the 1st May 1840, from
William McGehee and wife to General Taliaferro, and hav-
ing proved that he was in possession of the premises sued for
anterior to the execution of said quit-claim deed, he offered to
prove that Taliaferro, to whom McGehee had conveyed, said
he had purchased these lots for Herbert's wife and children.
It was shown that Taliaferro was dead. This proof was re-

jected by the presiding judge, and constitutes the sixth ground of exception. It is insisted that this proof was legal, as showing an existing trust in favor of Mrs. Herbert and her children, and to explain the character of the defendant's possession, to-wit, that he claimed as a purchaser, and consequently held adversely. It will be observed that the bill of exceptions no where informs us that Herbert was induced to act upon the declarations made by Taliaferro, or that he took or retained the possession of the premises in virtue thereof. Indeed, it does not appear that such declarations were made in his presence, or were ever communicated to him. Neither is it pretended that the deed from McGehee to Taliaferro was executed through mistake, or in any way fails to speak the true intention of the parties. It is not shown that Herbert or his wife or children, the alleged beneficiaries, ever paid any portion of the purchase money to McGehee, or are liable in any way for the same. How, under such circumstances, parol proof of declarations made by Taliaferro, that he was buying or had purchased the lots for Mrs. Herbert and her children, can be admitted in a court of law, the effect of which is to vary the terms of the deed, can be received, we are at a loss to determine. It is true that in many cases parol proof may be received to raise trusts or rebut equities, and to show that deeds absolute on their face were designed as mere securities, &c., but the case at bar does not come within any exception to the general rule "that the deed must be regarded as speaking its own meaning, and cannot be limited, enlarged, or explained by parol evidence, so as to make it operative otherwise than its terms indicate."—Lamar v. Minter, 13 Ala. Rep. 31–38, where the authorities are refered to. Neither can we perceive how the declarations of Taliaferro can affect the question of adverse possession, since, as we have before stated, the defendant's possession is unconnected by any proof with such declarations, and they were not offered in connection with a proposition so to connect them. They are clearly improper as original testimony, since they constitute no part of the *res gestæ*, not having been made at the time of the purchase which they were designed to explain.—Lee v. Hamilton, adm'r, 3 Ala. Rep. 533; Harris v. Taylor, 13 Ala. Rep. 324–328, and cases there cited. But were we wrong in this view, it is per-

fectly clear that the exclusion of the declarations has worked no injury to the plaintiff in error, since, if they tended to show that he claimed to hold under the quit-claim deed from Mc-Gehee to Taliaferro, he would thus connect himself with the title of Worsham, which he sold to McGehee, and that title, being but the equity of redemption, could not be set up as adverse to the mortgagee, or to Hanrick, who claims in virtue of a sale made under the mortgage. That one claiming title under the mortgagor does not hold adversely to the mortgagee or his assignee, see Wiswall v. Ross & Earle, 4 Port. 321-28; Foster v. Goree, 5 Ala. 424-7; 3 Peters' Rep. 47; 4 Cranch, 419.

7. Had the evidence shown that the plaintiff in error claimed to hold under the deed from McGehee to Taliaferro, and in no other right, we might conclude this opinion, and dispense with an investigation of the charges, as the question of adverse possession could not arise, according to the view we have above taken. But this does not affirmatively appear by the evidence in the record. On the contrary, there was proof that Herbert went into possession before the execution of the deed from McGehee to Taliaferro, and that he afterwards requested Andrew Dexter to procure a deed from Williams to Charlotte Dexter for lot number 17, who conveyed to said Andrew in trust for the benefit of Mrs. Herbert and her children. These facts having gone to the jury, it was for them to determine upon the character of Herbert's possession. The court could not determine that he claimed to derive his title and to hold *exclusively* under Worsham, the mortgagor, and thus cut off the inquiry of the jury upon the facts above refered to, which, however inconclusive they may be, at least tended to show that he may have entered and held the possession under claim of adversary title. It is said in a learned note to Smith's Leading Cases, 396, (44 Law Lib. 416,) " What constitutes adverse possession, and what evidence is sufficient, are of course questions of law ; whether in fact the possession is adverse, or under the owner's title, is for the jury, and the burthen of proving the possession was adverse is upon the person alleging it."—2 Watts, 23-27; 3 Penrose & Watts, 132. If then in the charge of the court to the jury there was error, the proof conflicting as to whether the plaintiff in error held and claimed under the deed from McGehee or from Charlotte

Dexter, or by claim of title exclusive of both, we cannot try the facts, and say no injury has resulted to the party from the erroneous charge, because the proof may fail to make out the possession adverse. The facts are for the jury. Strong v. Strong, 6 Ala. 347.

8. Let us then consider the charge which was given by the court in respect to the question of adverse possession. That assumes, as a legal proposition, "that to constitute the defend-ant's possession adverse, he must hold or claim under *colour of title.*" We understand by this, that the defendant, in the opinion of the court, must not only claim to hold adversely, assert-ing title in himself, but he must have COLOUR of title—in other words, some deed or written evidence of title. Thus under-stood, we think the charge erroneous. The authorities cited from New York seem to countenance this doctrine, but this court has never gone so far, and we are not disposed to go farther than our previous decisions have gone. The authori-ties seem generally to agree, that to constitute a possession ad-verse there must be an actual entry, *animo clamandi;* the party must hold under claim of title. In Badger v. Lyon, it is said "all the authorities concur that a mere trespass by entry upon another's land does not make an adverse possession, to consti-tute which, a claim *or* colour of title is necessary."—7 Ala. 567. In 1 Lomax, 622, it is said, "To constitute an adverse possess-ion, there must be a possession under claim of title. A pos-session for ever so long a time, stripped of the circumstance that it is accompanied by a claim of title, will not amount to an adverse possession, and will constitute no bar to those hav-ing the real title." Judge Lomax, in the 2d vol. of his Digest, p. 132, says: "An adverse possession is not the mere holding over by another against the will of the bargainor or grantor at the time the conveyance is executed by him. It is the holding by claim of title adverse to another's title, that consti-tutes an adverse possession." Mr. Hilliard, in his work on real property, vol. 1, p. 86, distinguishes between a mere tres-pass, which does not constitute an adverse possession, and a *disseisin,* which does. The latter, he says, must be by entry *at the time* under claim of title, &c.—"The intention guides the entry, and fixes its character." In Hinton v. Nelms, 13 Ala. Rep. 222–230, our previous decisions were reviewed, and the

result of them stated to be, that to avoid a sale made by one out of possession, the defendant must show, 1st—that *at the time* of the sale he had the actual possession; 2d—he must be able to connect his possession with a *bona fide* claim of title; 3d—and which claim of title he openly asserts as hostile or adverse to the title of the plaintiff. From the rule thus laid down, sustained as it is by the authorities above cited, and many others which might be added, we will not depart.—See Angel on Lim. 398, 453 to 455; 3 Conn. 403; 1 Har. & McHenry, 151; 10 Martin's La. Rep. 292; Abercrombie v. Baldwin, 15 Alabama Rep. 363, and the authorities there cited. Under this rule a colour of title is not indispensable to constitute the possession adverse, so as to avoid a deed.— It is sufficient that the defendant assert *bona fide* a claim to the property, in so verible, notorious and distinct a manner as to charge the vendor with notice.—44 Law Lib. 414. It results from this view of the law, that the court erred in charging that a colour of title was necessary to render the possession adverse. It is held by the Supreme Court of the United States, that if a mere trespasser, without any claim or pretence of title, enters into land, and holds the same adversely to the true owner, it amounts to an ouster or disseisin of the owner as to the land actually occupied; but if one enters under a deed or colour of title, then the adverse possession is co-extensive with the deed.—Lessee of Clarke et al. v. Courtney et al., 5 Peters, 519; Ewing v. Burnett, 11 ib. 41; Watkins v. Holman, 16 ib. 25. However this may be as respects the application of the statute of limitations, (and on this point we express no opinion,) we are very sure that the possession of a mere trespasser, who asserts no claim to be protected under the law against champerty, will not operate a disseisin so as to avoid the deed of the true owner. Indeed, the cases refered to hold that the intention to claim the land is *one* of the essential qualities of a dissesin as contradistinguished from a trespass, (11 Peters, 41); and that a bare trespass followed by a subsequent holding without assertion of title constitutes no ouster.—See also 4 Peters, 480–504; Clarke v. Courtney, *supra.*

9. It is insisted that Charlotte Dexter is an innocent *bona fide* purchaser of lot no. 17 from Williams, having paid therefor a valuable consideration, and that her title must prevail

Herbert v. Hanrick.

over that of Ross & Crane who had previously purchased of the same individual, but whose deed has not been registered. The law upon this subject is, that whatever is sufficient to put a party upon inquiry, must be regarded as sufficient to charge him with notice. In Chapman v. Glassell, 13 Ala. Rep: 55, we said, want of notice of a fact which is the result of a want of that diligence which the law requires for its ascertainment furnishes no ground for its protection. In the case before us, Andrew Dexter was the agent of Charlotte, or rather of the plaintiff in error, at whose request he acted, to make the purchase from Williams, and he proves that at the time he was informed by Williams that Ross & Crane had some claim to the land. He also states that he saw the record of a deed from Ross & Crane to Whitman. This was sufficient to put the party upon inquiry, and the fact that one of the firm of R. & C. was dead, and that the other resided out of this State, could make no difference, as respects the effect of the information which Dexter received. 1 Story's Eq. Jurisp. § 399 to 400, a. and authorities cited in note 4, p. 428, 4th edit. This view relieves us from the necessity of examining the effect of the failure to register the deed from Williams to Ross & Crane. Scroggins v. McDougald, 8 Ala. 382.

10. It is further insisted that the mortgage from Worsham to Whitman has not been recorded as required by our acts of registration, and that it is void as against the claim of Taliaferro, who is a subsequent purchaser. The certificate on the mortgage from Worsham to Whitman, is in the following form : " The State of Alabama, Montgomery county, personally appeared before me the above named Crawford M. Jackson, a subscribing witness to the foregoing instrument, and on oath, saith that he saw J. D. Worsham sign, seal and execute the same as his own act and deed, and that it was by him so executed in the presence of the other witnesses. May 30th 1835"—signed by the clerk. By the act of 1833 § 3, (Clay's Digest 152 § 2,) it is provided that no deed shall be admitted to record, &c. unless it shall have been first acknowledged or proved and certified, in the manner directed. The act of 1812 prescribes the form of the certificate of acknowledgment or probate of deeds, &c. (Ib. § 7,)—the substance of which must be complied with. See Clay's Digest, 153 § 9.

By the act of 1828, provision is made for recording deeds of trust, and the 3d section provides "such deeds and conveyances of personal estate shall be proved or acknowledged *as deeds and conveyances of real estate.*"—Clay's Digest 256, § 7. Were the question as to the form of the acknowledgment or probate of deeds of trust an open one, we should not be able to resist the conclusion, that the legislature designed that the substance of the form, required to be pursued to admit absolute deeds of real estate to record, should be pursued as to them. When the statute says they shall be proved or acknowledged "as deeds of real estate," it would seem to mean something more than that they should be barely proved or acknowledged. If it did not, the remaining portion of the sentence, "*as deeds &c.*" would be purely expletory, having no meaning whatever. This, however, would be opposed, it seems to me, to be the well settled rule of construing statutes, which requires, that every clause and word shall be presumed to have been intended by the legislature to have some force and effect, and that a statute must be so construed, as that no clause, sentence or word shall be superfluous, void or insignificant. See 22 Pick. Rep. 571; James v. Dubois, 1 Har. 285; Hutchens v. Niblo, 4 Blackf. Rep. 148. The act of 1812 prescribing the form for the proof, &c. of deeds of real estate, if we were for the first time construing the act of 1828, we should feel constrained to hold that deeds of trust should be proved or acknowledged *in like manner* as deeds, &c. of real estate. But a different construction has been placed upon it in the case of Hobson v. Kissam & Co. 8 Ala. Rep. 357, where it was held that it was only necessary to admit trust deeds to record that they be proved or acknowledged, without regard to the form prescribed by the act of 1812, which was applicable only to absolute deeds. That decision proceeds upon the ground that the act of 1828 was designed to admit the deed to record for the purpose of notice, whereas, by the act of 1803, an absolute deed of real estate properly certified was allowed to be used as evidence upon the acknowledgement or probate without further proof. According to this decision, from which we are not at liberty to depart, since rights must be supposed to have vested under it, the proof of the execution of the mortgage in the case at bar, as the same appears

in the certificate above copied, is sufficient to admit it to record. In the case of Brock v. Headen, 13 Ala. Rep. 370, which was a controversy in respect to property conveyed by a trust deed, the court gave an intimation opposed to the decision in Hobson v. Kissam & Co. having overlooked the last named case. The point, however, was only incidentally involved in Brock v. Headen, and did not influence the decision of the cause. Indeed a conformity to the previous decision in 5th Ala. would have made the case, which was affirmed, still more conclusive against the plaintiff in error, who claimed in opposition to the deed. No injury then has resulted or can result from this dictum in the latter decision, so that we may reaffirm Hobson v. Kissam as settling the rule, by which we shall hereafter be governed. This we do, because rights have doubtless vested under it, which it would be unjust to disturb.

11. The charges which question the regularity of the trustee's sale to Hanrick, may be readily disposed of. The legal title to the premises being in the trustee, and he having conveyed to the defendant in error, it is not for a stranger to the deed to object that the sale was not made in conformity with the power confered by the deed. See Brown v. Lipscomb, 9 Por. Rep. 472; Gary v. Colgin, 11 Ala. Rep. 514, 519; Foster v. Goree, 5 Ala. Rep. 424. The same may be said with respect to the consideration of the deed to Hanrick, and of the previous transfer of the notes given to secure the purchase money by Worsham to Whitman, which constituted the consideration of the mortgage. The deed from the trustee in whom was vested the legal title, vested that title in Hanrick, unless it was void by reason of an adverse possession in the plaintiff in error, and hence the questions attempted to be raised by these several charges could not properly affect the result of the cause. If the plaintiff in error claimed through Worsham, the mortgagor, and could show that before the sale the mortgage had been fully satisfied, a very different question would arise, but this is not pretended. See as to the effect of the trustee's deed, Huckaby v. Billingsley, at this term.

The importance of several of the principles involved in this cause, and the zeal, ability and apparent confidence with

which it has been argued on both sides have induced me to notice the several points more at length than I otherwise should have done. For the error in the second charge, the judgment of the Circuit Court must be reversed, and the cause remanded.