## GARY v. COLGIN.

1. Where a deed of trust was made by a debtor to a trustee to secure a creditor and sureties, the declaration by one of the sureties that the grantor made the deed to prevent his being compelled to pay a security debt, is not sufficient to enable a sheriff seizing the property, after its sale by the trustee to that surety, and a conveyance by him to another in trust for his

creditors, to raise the question that the first deed is fraudulent as to the creditors of the grantor, in the absence of any other proof of fraud.

2. Where property is conveyed by deed of trust and sold by the trustee in a different manner than directed by the deed, a stranger to the deed cannot dispute the regularity of the sale, although the purchaser is guilty of fraudulent acts in connection with it, and has made no payment of the purchase money.

Writ of Error to the Circuit Court of Sumter.

TRESPASS by Colgin against Gary for taking and converting several slaves.

At the trial of this cause in the county court, (it being there brought,) the plaintiff made title to the slaves in controversy under a deed in trust executed by Edward B. Colgin to the plaintiff, for the benefit of certain creditors therein named. The defendant endeavored to justify under a *fi. fa.* in favor of Kissam *&* Co. v. Allen P. Binns. It was proved the slaves had been the property of Binns at a time previous to the rendition of the judgment of Kissam & Co. Binns made a deed of trust of all his property in trust to secure Edward B. Colgin and Charles H. Binns, who were bound as sureties for him. This deed stipulated that Binns should remain in possession until it became necessary for the trustee to take possession to close the trust. It was proved that the trustee in that deed went to the residence of Binns and exposed the property to public sale. Edward B. Colgin became the purchaser of the slaves in controversy, as well as of a number of others, by bidding them off. There was testimony conducing to show that Edward B. Colgin failed entirely to comply with the terms of the sale, and that no conveyance of the slaves was made by the trustee to him, and that they remained at the same place after the sale that they were at before it took place. They also remained at the same place up to the time of the seizure by the defendant as sheriff, but they were proved to be Edward B. Colgin's property after the sale, and acts of ownership by him were proved. There was evidence conducing to show that Edward B. Colgin, on the day of the sale, prevented or persuaded persons not to bid, and said after he purchased or bid them off that the pro-

perty of Binns would be able to pay all his own individual debts, and that the deed of trust was made for the purpose of preventing him from having to pay debts on which he was bound as surety for one Freeman.

The defendant's counsel asked the court to charge the jury, that if they believed the deed of trust made by Binns was made to delay or hinder creditors, it was void. The court said it felt some difficulty in giving the true rule. That a debtor had a right to prefer creditors, and he thereby frequently not only hindered, but entirely defeated those not preferred; and if the jury believed the debts preferred were just debts, and the deed was made to secure them, the deed was not void, although the grantor was induced to make it to prevent the recovery of the money due by him as surety for Freeman out of the effects of the grantor, unless such was the leading intention of the grantor.

It was further in evidence, that Edward B. Colgin promised the trustee on the day of sale to procure the obligations or debts of Binns secured in the trust deed on some short time, and that he failed to comply with this promise. The court was requested to charge the jury, that if by the terms of the trust the trustee was requested to sell for cash and he departed from those terms, the purchaser obtained no title.

Also that if Edward B. Colgin merely bid off the property, but paid nothing for it, and deceived the trustee, and the trustee made him no title and gave no receipt for the purchase money, that the title remained the same as before said sale, and that Edward B. Colgin acquired no title by the sale.

These charges were refused, and the jury was instructed that they could not inquire into or take advantage of those irregularities if they existed, but only the creditors whose claims were secured by the trust.

The defendant excepted, as well to the charges given as to the refusals to charge as requested, and the several rulings of the court were assigned as error in the circuit court, to which the cause was removed by writ of error. That court reversed the judgment, and the plaintiff now assigns this reversal as error.

S. W. Inge, for the plaintiff in error, made these points:

1. The charges requested are entirely abstract, as there was nothing to show either that the deed from Binns was fraudulent, or that the defendant stood in the position to raise the question.    All that is shown is, that Binns preferred certain creditors, and this he had the right to do.    [Stover v. Herrington, 7 Ala. Rep. 193; Borland v. Mayo, 8 Ib. 118.]

2. But even if the deed was fraudulently made by Binns, the plaintiff is a *bona fide* purchaser without notice of the fraud or connection with it.    [Cummings v. McCullough, 5 Ala. Rep. 338; Mallory v. Stodder, 6 Ib. 801; Horton v. Smith, 8 Ib. 73.]

3. The supposed irregularities in the sale by the trustee are matters between the trustee and *cestui que trust*, and no question of the kind can be raised by a stranger.    [Brown v. Lipscomb, 9 Porter, 472.]    Even if the sale by the trustee was fraudulent, those only affected by the fraud can complain.    [Bozeman v. Draughan, 3 Stewart, 243; Dearman v. Radcliffe, 5 Ala. 195.]

R. H. SMITH, for the defendant in error, assigned:

1. That the plaintiff in the action claiming only as trustee of E. B. Colgin, he takes no other or better title than Colgin had, and does not occupy the position of an innocent purchaser.    It therefore rests on him to show the fairness of the deed.    [Smith v. Leavitt, 10 Ala. 92.]

2. The admissions of Colgin were good evidence to charge those claiming under him, as they were made after his purchase and when possessed of the property.    [4 Ala. Rep. 40; 1 Ib. 344.]    The intention of the parties in making the deed may be arrived at by their subsequent conduct or admissions. [10 Ala. R. 92.]

3. The first charge asked for is in the language of the statute of frauds, and the one given is clearly not the law.

4. The defendant, as sheriff, stood in the place of the creditor, and could not assert any defence against the deed that his principal could not assert; therefore, on the principle assumed by the court, the last charge was wrong.

GOLDTHWAITE, J.—1. If the evidence before the jury in this case, was of a nature proper to raise the question,

whether the deed made by Binns was for the purpose of de-
laying or hindering creditors, then it must be conceded the
defendant was entitled to the charge requested by him on
the general principle, however correct it would have been
for the court to explain the principle in its application to the
particular case.   When however, the evidence set out in the
bill of exceptions is looked to, we think it becomes apparent
there was none to warrant the charge asked for.   It will be
remembered the plaintiff claimed under a conveyance from
Colgin, who was the purchaser under a trust deed executed
by Binns, as whose property the slaves were seized and sold.
Now it is quite clear, the defendant may be allowed to justi-
fy his seizure, by showing that all these conveyances are in-
valid, by reason of fraud, as in that event no title would pass
and the slaves remain the property of Binns, as which the de-
fendant seized it.   But it is equally clear, that if the slaves
were conveyed to Inge, as the trustee to secure creditors, or
sureties, *bona fide*, and for a valid consideration, before the
lien of the execution attached, which the sheriff held at the
time of seizure, there was no title in Binns which would jus-
tify a taking.   The object of the defendant in asking the
first charge, was to support the charge that all the conveyan-
ees were parts of a fraudulent and therefore inoperative con-
trivance.   The evidence as set out must be presumed to
show that the deed was on a valid consideration, or in other
words, that debts were due to some preferred creditor, to
whom the other Binns and Colgin were the grantor's sure-
ties.   It is not denied that a debtor may lawfully prefer one
creditor to another, (Stover v. Herrington, 7 Ala. Rep. 193,)
but the defence insists that the admission of Colgin, one of
the beneficiaries in the deed, that it was made to prevent the
property of the grantor from being sold to pay a debt for
which he was surety for another, is evidence to warrant the
jury in declaring the deed void.   In our judgment, this ad-
mission, although it might be proper evidence to go to the
jury, was not sufficient by itself to invalidate the deed, be-
cause, if the utmost effect is given it against the purchaser,
it does not connect itself with either the preferred creditor or
the other security of the grantor—both of whom are likewise

beneficiaries under the deed. In Anderson v. Hooks, 10 Ala. Rep. 704, we held, that the connection of a simulated creditor with one that was *bona fide*, as the beneficiaries in a deed of trust, did not avoid it, although in that case the intent of the grantor to defraud was entirely apparent. It will be seen, this case goes much beyond the one before us, and establishes, that a deed for the indemnity of sureties will not be avoided, though the grantor and some of the beneficiaries concur in the fraudulent intent. [See also, Borland v. Mayo, 8 Alabama Reports, 104, § 18.] We come therefore to the conclusion, that the defendant was not warranted in asking the charge referred to, and for this reason there is no error in the refusal. The charge actually given in response to the request, calls for no other remark, than that if conceded to be erroneous, which, however, we should very much doubt, it could not prejudice the party.

2. The other charge grew out of the refusal to charge as requested on the supposed irregularity of the trustee's sale, and the purchasers conduct in relation to it. In Brown v. Lipscomb, 9 Portor, 472, where a sale by a trustee was not in conformity with the power, we held this was a matter that could not be investigated by a stranger to the deed. To the same effect is Foster v. Goree, 5 Ala. Rep. 424. It is evident the purchaser under the trustee's sale, would not be allowed to defeat an action for the price on the ground that the power had not been complied with, nor would it be any defence to the trustee, in a suit by the beneficiaries of the deed, that he had parted with the property without receiving pay. Neither the defendant nor the creditor under whom he acted, have any interest in investigating the questions of regularity, for if the sale was invalid, the purchaser would be a bailee for the trustee, and as such entitled to his action for the unlawful seizure. [McBride v. Thompson, 8 Ala. Rep. 650.] Another reason why a stranger should not be permitted to defeat the possession acquired under an irregular, or even void sale, is, that the purchaser nor seller can dispute its validity, except in a direct suit to cancel the sale, for in no other mode could the parties be placed in the condition they were at the sale. [Wier v. Davis, 4 Ala. Rep. 442; Creagh

v. Savage, 9 Ala. Rep. 959; Costello & Keho v. Thompson, Ib. 937.

On the whole, we are unable to perceive any available error in the ruling of the county court; its judgment is therefore affirmed, and that of the circuit court reversed.

COLLIER, C. J.—Edward B. Colgin acquired no title to the property in question, either as against the trustee, the beneficiaries in the deed, or Binns; and it was clearly competent for the trustee to have exposed it to sale again, to subserve the purposes of the trust. This is clear from a mere statement of the fact that he did not comply with the terms on which he was permitted to bid it off, and has really paid nothing for it. He did not then occupy the situation as it respects the property of one who acquires the possession under a purchase fraudulent as to the creditors of the vendor. A derivative purchaser from such fraudulent vendee, who becomes such *bona fide*, and for a valuable consideration, previous to the attaching of the liens of creditors, obtains a paramount title. There the first vendor might have made a fair sale of the property, and one who has acquired all his estate, though by a fraudulent purchase, stands in the same predicament with him, and may make a similar disposition of it. Here the trustee has no power to compromit the interests of his grantor or *cestuis que trust*—he cannot give away the property, either undisguisedly or under the semblance of a sale, for which no equivalent is asked or received. The proof negatives the idea that a gift was intended, but shows that E. B. C. failed to pay the purchase money. I have said that under the circumstances, this prevented him from acquiring any title whatever; and having no title himself, he could transmit none to a third person.

We have repeatedly held, that one who has right to a chattel seized under a *fieri facias*, cannot interpose a claim of property under the statute, and prevent a sale by proving that a third person has a title, which, if asserted, would defeat the execution. The claimant himself must have either a general or special property, which would entitle him to maintain an action at law. In the present case, he has shown none, and it follows that the third charge prayed should have

been given.   I forbear to consider the questions raised upon the statute of frauds, and have only to add, that I dissent from the judgment just pronounced.