## JOHN, ADM'R, vs. PARKE JONES.

1. Can a surety, when sued at law by his co-surety for contribution, impeach the validity of a purchase by the latter of trust property, conveyed by the principal for his indemnity, to reduce the recovery, or must he not in such case resort to a Court of Equity for relief?—Qu.

2. Where property is conveyed by the principal for the indemnity of a surety, his co-surety is liable for contribution, as to any balance that may remain due, after a faithful application of the proceeds of the trust estate towards the extinguishment of the debts.

3. One surety, having funds of the principal in his hands, for the purpose of paying the joint liability, cannot, as against his co-surety, be allowed reimbursement, out of the trust estate, for costs, commissions and damages, that subsequently accrue, without the latter's consent.

4. A surety, against whom a judgment is rendered, does not lose his right to have contribution from his co-surety, by sueing out a writ of error, and superseding the judgment.

5. A. J., for the indemnity of P. J., a surety, executes to W. a deed of trust on two parcels of land, &c., which provides, that should the said P. J., in consequence of his liability, at any time thereafter, "suffer loss or damage, or be compelled to pay the said debts, or any part thereof, the said W., when requested by the said P. J, shall proceed to sell the property, or so much thereof as may be deemed sufficient, and from the proceeds of the sale reimburse and satisfy the said P. J. for all loss or damage which he may have sustained:" P. J. is compelled to pay a sum of money for A. J. greatly less than the conjoint value of the two parcels of land, and, at his request, W. advertises the lands for sale, but A. J. objects to one parcel of the land being sold separately from the other, as contemplated by the deed, for the reason that they will not thus sold command their full value: The parties thereupon enter into an agreement, by which A. J. consents to a sale of the two

parcels of land *together*, and an appropriation of the proceeds, not only to the reimbursement of P. J., but towards the extinguishment of the other liabilities provided for in the deed, and in consideration thereof, P. J. covenants to " release the said A. J. from all claims or demands whereon he, the said P. J., is bound as security for the said A. J.—— *Held*—

1st That the agreement as to P. J. is supported by a sufficient consideration:

2. That the effect of P. J.'s covenant to release A. J. is to discharge W. H. J., a co-surety, from all liability for contribution.

Error to the Circuit Court of Perry. Tried before the Hon. John D. Phelan.

THIS was an action of assumpsit, by the defendant against the plaintiff in error, to recover contribution for monies paid by him, as co-surety with William H. Jones, the plaintiff's intestate, of one Allen Jones. A bill of exceptions, found in the record, discloses the following state of facts: On the 30th October 1843, Allen Jones executed to Anthony P. Walke, a deed of trust on two parcels of land and a number of slaves, which after reciting the liability of the plaintiff below, as his surety on certain notes, drafts, and bonds, and among them two notes, in favor of one Daniel Jones for $1000 and $3210 respectively, on each of which the said plaintiff, and the defendant's intestate were his securities, provides, " that should the said Parke Jones, or his representatives, at any time hereafter suffer loss or damage, in consequence of any of the above described notes, drafts or bonds, or be compelled to pay the same or any part thereof, that then, and in that case, the said Anthony P. Walke, his heirs or assigns, shall when requested by the said Parke Jones, after giving thirty days notice of the time, place and terms of sale, by such advertisement as he may deem best, proceed to sell, at public auction for cash, to the highest bidders, the property herein conveyed, or so much thereof as may be deemed sufficient, and from the proceeds of sale, after paying the costs attending the execution of this conveyance, reimburse and satisfy the said Parke Jones, or his representatives, for all loss or damage, interest and cost inclusive, which he or they may have sustained in consequence of his above mentioned suretyship." The note for $1000 was reduced to judgment in the County Court of Marengo county,

on the 16th September 1844, against Allen and Parke Jones, upon which a writ of error was sued out to the Supreme Court, and supersedeas bond given by said Allen and Parke Jones, with one Saunders, as their surety, where it was subsequently affirmed with 10 per cent damages and costs. This judgment, amounting, principal, interest, damages and costs inclusive, to $1305 45, was paid by Parke Jones in September 1845. The other note for $3210 was reduced to judgment in the amount of $3869 50 in the District Court of U. States at Tuskaloosa, against the said Allen and Parke Jones on the 28th May 1846; which judgment was satisfied as hereinafter stated. The slaves mentioned in the deed of trust were sold under execution by the sheriff of Marengo, and the proceeds of the sale applied to the payment of the debts provided for in the deed, but the specific appropriation of this fund is no where shown. After this sale by the sheriff, Walke, the trustee, advertised the two lots or parcels of land, (which, there was some evidence tending to show, were together worth more than enough to reimburse the said Parke Jones the whole amount he had paid out, as well as to discharge all of his remaining liabilities for Allen Jones) when the latter objected to the sale taking place, on the ground, that if the lands were sold in separate parcels, according to the provisions of the deed, (the two together composing one plantation) they would not bring their value. The parties thereupon on the 31st October 1845, entered into an agreement, by which, after a recital of the execution of the trust deed of the 30th October 1843, and that it had become evident, that the entire property would have to be sold eventually, to meet the demands which it had been conveyed to secure, and that it was thought best for all the parties concerned, the said Allen and Parke Jones covenanted, the one with the other in the sum of twenty thousand dollars, that the said Allen should suffer " the said Walke to sell the *whole of the real estate together,* and to apply the proceeds of the sale to the entire fulfilment of the terms, object and intention of the said deed of trust;" and that the said Parke in consideration of the premises, among other things, would " *release the said Allen Jones* from all claims or demands whereon he, the said Parke Jones, is bound as security for the said Allen Jones" &c. Certain

portions of this agreement seemed to contemplate, that the said Parke Jones should, at the sale, become the purchaser of the property, and there was testimony conducing to show, though it was conflicting on this point, that in consequence of an understanding at the sale, that he would be the purchaser, and assume the payment of the remaining debts, the property sold for greatly less than its value. At the sale, which took place after the execution of the above agreement, Parke Jones did become the purchaser of the two parcels of land at the price of $4660, and the trustee, Walke, made him a deed for the premises, allowing him in the settlement of the amount of his bid, a credit of $2225 75, which he had paid for Allen Jones in the discharge of the judgment of $1306 45 and in satisfaction of other demands provided for in the deed, and taking from him his obligation to pay the balance on the debt, on which the judgment in the District Court at Tuskaloosa was afterwards rendered, whenever the marshal should require payment. This last judgment, including principal, interest, costs and marshal's commissions, was satisfied in full on the 26th October 1846, by sale, under execution, of the slaves of said Parke Jones. In the course of the trial the defendant offered to introduce proof as to the pecuniary condition of the plaintiff at the time of and immediately after the sale of the lands, but the court excluded the evidence.

Much testimony appears in the bill of exceptions, which has no bearing on the points embraced in the opinion of the court and is therefore omitted.

The court charged the jury in substance :

1st. That if after the faithful application of the proceeds of the property, to the debts provided against in the deed of trust, a balance remained due, which Parke Jones, the plaintiff, had paid, and against which he had no indemnity, the defendant as to such balance was liable for contribution.

2d. That Parke Jones, the plaintiff, was entitled to reimbursement out of the trust effects for the costs, Supreme Court damages, and marshal's commissions paid by him.

3d. That the covenant of Parke Jones, the plaintiff, contained in the agreement of 31st October 1845, did not absolve the defendant from liability for contribution.

The defendant's counsel asked the court to charge the jury,
34

that if the plaintiff paid the judgment in the County Court of Marengo, as the security of Allen Jones, on a writ or error bond, and as co-security of Saunders, he is not entitled to have contribution from the defendant, which charge the court refused to give.

To the ruling of the court, to each of the charges given, and to its refusal to charge as requested, the defendant excepted and now assigns them as error.

John, for plaintiff:

1. The testimony in relation to the pecuniary condition of Jones at the time of the sale, was certainly proper and should have been admitted.

2. To establish the right to contribution, the plaintiff must shew that his payment has removed a common burthen from himself and the defendant, and that each are benefited by it; this seems to be a principle universally admitted. Screven v. Joyner, ex'r, et al, 1 Hill's Chan. Rep. 260.

3. If this position be true, it follows that the estate of W. H. Jones was not liable to contribution to the plaintiff, for cost beyond the court cost. Sheriff's commissions, Supreme Court costs and damages in Supreme Court, never were a common obligation. The estate of W. Jones, was never liable for any of these costs, and there payment by the plaintiff was no advantage to the estate. Boardman v. Paige, 11 N. Hamp. 431; Woodson v. Johns, 3 Munf. 230.

4. The deed in trust made by Allen Jones to P. Jones, to which W. H. Jones was not a party, cannot affect the estate, so as to enlarge the plaintiff's right to contribution, especially as all these costs, &c., were incurred after the making of the deed. To apply any portion of the indemnity to the payment of cost and commissions, &c. for which the estate was not liable, would be a misapplication of the indemnity.

5. The plaintiff Jones was bound to make a prudent disposition of the property conveyed to him in the deed, and to apply the proceeds properly; therefore, if he applied the proceeds of the property to the payment of liabilities for the payment of which his co-surety was not bound—this would be a misapplication of the fund for their joint indemnity, and the estate of this co-surety would be discharged, pro tanto.

6. Jones cannot claim contribution on account of his payment of the thirteen hundred dollars. By executing the supersedeas bond with Saunders, he released the estate from liability on account of that case: It is very clear that Saunders could not claim contribution from the estate, and that P. Jones can recover contribution of his co-surety Saunders; therefore, P. Jones, by placing himself in the condition of Saunders as to this estate, cannot recover contribution. Dunlap v. Foster, 7 Ala. 734; Langford's ex'rs v. Perrin, 5 Leigh's Rep. 552; Fitzpatrick's adm'r v. Hill, 9 Ala. Rep. 783.

7. By the proper legal effect of the deed executed by Parke Jones, Allen Jones, and his wife C. T. Jones on the 31st Oct. 1845, Parke Jones became a principal in the debts to Daniel Jones and thereby discharged the co-surety from liability to contribution. Theobald on Prin. & Sur. 1 Law Lib. 2 Cor. 6.

8. The deed executed the 31st Oct. 1845, will operate as a release of the principal by the surety, and the surety cannot release his principal, and hold his co-surety liable to contribution, for if the surety recover from his co-surety, the co-surety would have a right to recover immediately from the principal the amount he had been thus compelled to pay. And thereby the security who releases the principal could violate his contract with the principal. This deed might be regarded as a composition by the security with the principal, and if it is so the co-surety is discharged. Pickering v. Marsh, 7 N. Hamp. Rep. 192.

9. A release by a creditor to one joint and several obligor, discharges both. Tuckerman, et al. v. Newhall, 17 Mass. Rep. 581.

GARROTT, for defendant in error:

1. The point most vitally affecting the parties in this case is as to the effect to be given to the instrument signed by Parke Jones and Allen Jones, dated October 31st 1845. Can this instrument be construed to operate as a release to defendant as administrator? The words used are, "the said Parke Jones, in consideration, &c. AGREES to *release* the said Allen Jones, &c." 1st. There was nothing in existence upon which this release could take effect to the extent contended for, because the liability of Allen Jones to Parke Jones had not then

fully accrued, and a release must take effect *in presenti.*—Dillingham v. Estell, 3 Dana, 21 ; Seymore v. Minturn, 17 J. R. 169. 2. This instrument does not contain the proper words of a release, and any release to have the effect contended for must be a good technical release.—17 J. R. 169. 3. A release not under seal, and without consideration, is void.— Jackson v. Stackhouse, 1 Cow. 122; Gibson v. Weir, 1 J. J. Marshall 446. 4. Since our statute (Clay's Digest, 340 § 153) permits the consideration of instruments under seal to be enquired into—a release is void, unless supported by a sufficient consideration. In this case, there was no consideration in the deed, and none was shown; the law day of the first deed had passed; the trustee had advertised the land for sale, Allen Jones resisted, because, as shown in the last instrument, it was for the benefit of all parties that the land should be sold in a body ; and in order to induce Allen Jones to do what was for his own benefit, as well as the others concerned, Parke Jones agreed to pay Woodfin $200 in money or value, to release A. Jones from $500 for rent of land, and to pay his wife $400 for her dower. Surely all this was sufficient consideration for Allen Jones' signing the bond. 5. But this could not be a release, because it is absurd to suppose that one debtor can release another from the payment of a debt for which they are both bound. 6. The language is, plaintiff *"agrees* to release," does not actually release, but only *agrees* to do so. This agreement plaintiff might stand to or not, as he chose, and the remedy of Allen Jones would be for a breach of his covenant. 7. No consideration whatever passed to plaintiff for this covenant; A. Jones had before conveyed his land and that was beyond his control. Even if plaintiff had agreed to receive the land in satisfaction of his liability for A. Jones and the land would not have discharged this liability, the agreement would have been a *nudum pactum* as to the overplus.—Smith v. Stone, et al. 4 Gill & Johns. 310. 8. But if the agreement was binding, then it would not operate as a release in favor of defendant's intestate.—Clayton v. Kynaston ; Aloff v. Scrimshaw, & Lacy v. Kynaston, 2 Salk. 573, 4 and 5; Dean v. Newhall, 8 T. R. 168 ; Garnett v. Mason, 2 Brock. 184, 219.

2.—1. The court did not err in rejecting evidence as to the pecuniary condition of the plaintiff, because defendant did not

indicate his intention of attacking the *bona fides* character of that sale, and if he had, the sale could not have been declared void in this proceeding.—Gary v. Colgin, 11 Ala. Rep. 511. 2. As defendant's intestate claims under the deed, he must take according to its terms, and the deed provides that plain- tiff shall be paid for all "*loss or damage, interest and costs in- clusive*" he may have sustained in consequence of his surety- ship.

CHILTON, J.—We cannot perceive upon what principle the evidence rejected could be admitted. There was no at- tempt in the court below to impeach the *bona fides* of the sale to Parke Jones. The controversy seems to have been with respect to the application of the proceeds of the sale of the land, and both parties seem to have acquiesced in the sale. The proof was therefore most clearly irrelevant, and its exclu- sion could not possibly have been attended with any injurious consequences to the defendant. It may also futher be ques- tioned whether one standing in the relation of co-surety to the beneficiary in the deed, can, when sued for contribution *at law*, be allowed to impeach the validity of a purchase made by the plaintiff, of the trust effects conveyed for the plaintiff's indemnity, and thus by charging the plaintiff with a higher price for the effects purchased by him, lessen *pro tanto* the de- mand for which the parties were bound as sureties. Should not the defendant in such case resort to a court of equity, so that the parties might be placed in statu quo, and the land re- sold, according to the rules prescribed by that court? As it is not necessary to a correct disposal of this case, we decline a decision of the question.—See 11 Ala. Rep. 519. It was correctly decided that the estate of the deceased co-surety was bound to contribute towards the payment of the joint liability by Parke Jones, as to any surplus which should remain after a proper application of the trust funds of the principal to the satisfaction of the demands, unless the statute of non-claim in- terposed a bar; for it is very clear that the co-surety has a right to share equally with the plaintiff who demands contri- bution, the benefit of any payment made by the principal, or out of his effects.

In respect however, to the right of Parke Jones to be reim-

bursed the marshal's commissions, and the costs of the Circuit and Supreme Courts, together with damages of ten per cent added by the judgment of the latter court on affirmance, out of the trust effects, being funds in his hands as the proceeds of the sale of the land, we think the Circuit Court mistook the law. It is certainly true that Parke Jones had the right to protect himself against his individual liability for Allen Jones by the deed of trust, and so far as he had paid, or was liable to pay, at the time of the execution of the trust deed, cost, damages, &c., he had a right under the deed to be reimbursed; but the law will not permit him, holding the funds in his own hands, to suffer costs and damages to accrue upon the debts which the funds are designed to adjust and pay off, and to hold either his principal or co-surety liable for the same.

It is said by Mr. Pitman, in his work on Principal and Surety, 152, that a surety cannot claim contribution from his co-surety for the costs of defending an action brought against him by the creditor, unless the co-sureties authorised him to defend the action. The reason assigned is, that it is the duty of the surety to pay the debt, if just, when demanded by the creditor, in which event, the costs, damages and sheriff's commissions would have been avoided. But another reason may be given: The surety has a right to stand on the very terms of his contract. He is, in default of the principal, bound to contribute to the payment of the debt, but he does not obligate himself to pay any portion of the costs and damages, which may be superadded by the unauthorised act of his co-surety. This is not a common burthen, but must be borne by him who has been the cause of creating it. Suppose that Parke Jones had interposed the plea of *non est factum*, and in litigating that defence, a large amount of costs and damages had occurred, would it not be manifestly absurd to say that his co-surety should contribute to the expense attendant upon an effort to cast upon him the payment of the whole debt? In Knight v. Hughes, 3 Car. & Payne 467, a judgment had been rendered against one W, for whom the parties were sureties, as collector of taxes, and afterwards, W failing to pay, separate suits were instituted against his sureties, Knight and Hughes. Judgment being rendered against the former for the amount of the judgment and costs against W, he paid

it, and sued Hughes in assumpsit for contribution. It was held by Lord Tenderden, C. J., that Hughes was only liable to pay one moiety of the amount of the original verdict, and further that as against Hughes, the plaintiff had no right to set off an amount he had recovered from the principal against the cost, but that it might go towards the extinguishment of the demand for which the co-surety was bound. See also Bleaden v. Charles 7 Bing. 246; Roach v. Thompson, M. & K. 487; Gillett v. Reppon, ib. 406; Pitman on Prin. & Sur. 135.

The sueing out of the writ of error to the Supreme Court, and giving bond for its prosecution, does not have the effect to destroy his right to contribution. It is true, if Saunders had paid the debt, he could not have claimed contribution from Wm. H. Jones, as the latter was not bound with him upon the bond, but the giving of the writ of error bond by Parke Jones was incident only to the defence which he set up, and as he was under an obligation to indemnify Saunders, the judgment being against him, when he pays the debt, the right to contribution attaches as against the other co-surety, bound for the payment of the note on which the judgment was founded. So that while we consider the cases of Dunlap v. Foster, 7 Ala. Rep. 730, and Fitzpatrick's adm'r v. Hill, 9 Ala. Rep. 883, as holding the correct doctrine, which would exclude Saunders from the right to contribution, if he had paid the money, so far as W. H. Jones is concerned, still these decisions do not apply to the right which Parke Jones, the surety upon the note, has to call on his co-surety, notwithstanding he may have superseded the judgment against him by giving the bond.

If, however, we were mistaken in this view, there is another view of the case, which is in our opinion conclusive of it, so far as its decision in this upon the record now before us is concerned. By the agreement of 31st October 1845, the present plaintiff, in consideration of its execution, and the alteration made of the deed in respect to the manner of selling the land, &c., agreed to release Allen Jones from all claims wherein he the said Parke was bound at the time of the execution of said agreement as security for Allen Jones, except some claims which have no connection with this controversy. It is insisted by the counsel for the defendant that this instru-

ment cannot take effect as a *release*, inasmuch as the liability of the principal to Parke Jones had not then fully accrued, and that until the surety had paid the debt, there was no such existing liability as could be released, because a release technically so called, must operate *in presenti*. But we think it very clear, the counsel mistakes the nature of this argreement. Parke Jones does not propose to release the principal from his then liability to him by reason of previous payments made on account of the principal, but to release him from all debts for which he was then bound as surety. In other words, the said Parke Jones undertakes, in consideration of the provision made for him by the said Allen Jones, himself to become the principal, and to discharge the said Allen from the debts—or, which is the same thing, to procure his *release* from all the claims. This covenant is not only under seal, but we think, under the facts presented by the record must be regarded as sustained by a valuable consideration. By reason of it, the whole estate was sold at one time, and Parke Jones enabled to become the purchaser, without paying ready money for it. By it, he acquired the right to have the property sold before he was compelled to pay the money, and if he esteemed the property conveyed of value sufficient to pay the debts, there was nothing unreasonable in his engagement to discharge the principal from the debts, as he had the power (and the agreement seems to contemplate its exercise) of buying in the estate when sold, as it appears he afterwards did.

Having thus ascertained the true construction of the covenant, on the part of Parke Jones, in the agreement of the 31st October 1845, to release the principal from all claims, &c., it follows, that having satisfied them, he cannot call on his co-surety for contribution on account of these claims. Did such right exist, and were Parke Jones allowed to recover from Wm. H. Jones' estate, the administrator could recover the amount thus adjudged against him, from Allen, the principal, who in turn would recover from the plaintiff in this case. Here then would be three suits, and nothing finally accomplished, save the loss of the costs of their prosecution. But this doctrine of contribution is founded upon equitable principles, and it would be most inequitable to permit the plaintiff to recover from his co-surety money which, by his covenant,

he would be bound to refund upon the action of their common principal.

The views we have taken being conclusive of the case, it is unnecessary further to elaborate this opinion in discussing the other points raised upon the record.

Let the judgment be reversed, and the cause remanded.