# WHEELING.

FULTON et al. v. JOHNSON.

Submitted January 30, 1884—Decided April 19, 1884.

(*JOHNSON, JUDGE, Absent.)

| 24 | 95 |
| 42 | 78 |
| 24 | 95 |
| 44 | 689 |
| 24 | 95 |
| 54 | 38 |
| 24 | 95 |
| 55 | 833 |

1. To entitle a husband to courtesy under sec. 15 ch. 65 of the Code of W. Va. as amended by sec. 2 ch. 207 of the Acts of 1872-3, his wife must have been seized in fact during her lifetime of the land ; and a mere *seizin in law* by the wife during her life will not entitle her surviving husband to courtesy in her land. (p. 107.)

*Related to defendant.

2. If a suit be brought in equity by a grantor or some one claiming under him to set aside a sale by a trustee and a deed to the purchaser by such trustee of the tract of land purchased at such sale, on the ground that the sale had not been advertised as required by the deed of trust, the burden of proving such allegation is on the plaintiff in such suit, as after the making of the deed by the trustee to the purchaser and its recordation it will be presumed that the land was properly advertised, and this presumption must be rebutted by some proof to the contrary. (p. 108.)

3. In action of ejectment by such purchaser, to whom the trustee has made a deed, which has been duly recorded against the grantor in the deed of trust, it would seem that the defendant will not be permitted to prove, that the land had not been advertised before the sale as required by the deed of trust, as the deed by the trustee to the purchaser, whether said land was properly advertised or not before the sale, would confer on the purchaser the legal title to the land.   (p. 109.)

4. If for any reason it is doubtful, whether a sale by a trustee and a deed to the purchaser are valid, and the purchaser executes a deed to the trustee reconveying the land to him to hold the same as fully and completely, as if no sale had been made under the deed of trust, and the trustee then again advertises the land for sale, and sells it at public auction, and the purchaser at the first sale again becomes the purchaser, and the trustee executes to him a deed for the tract of land, which in a preamble recites all these facts and the payment of the purchase-money at the second sale by the purchaser and concludes by the trustee conveying to this purchaser, who was the same person as the first purchaser, this tract of land with all the right title and interest of the grantor in the deed of trust, to have and to hold the said tract of land to said purchaser, his heirs and assigns forever. HELD :

This purchaser will have the title of the grantor in the deed of this tract of land, whether the first sale and deed to the purchaser be valid or void.   (p. 109.)

GREEN, JUDGE, furnishes the following statement of the case:

Virginia Fulton, Presley W. Hiett, Martha Johnson and Rhuhama Darling, and also Thomas G. Rector, James H. Rector, Enoch Rector and Emma H. Rector, infants who sued by their next friend Thomas Rector, brought an action of ejectment against Joshua Johnson in the circuit court of Wood county to recover a certain tract of land containing three hundred acres more or less in said county. The plaintiffs were heirs at law of Jane Hiett, deceased; and they filed

their declaration in the circuit court of Wood county on March 3, 1880. This declaration was in the usual form and described the tract of land by metes and bounds and as the tract of land conveyed by the defendant to M. P. Amiss, trustee, by deed dated September 8, 1864, and duly recorded. The defendant pleaded not guilty to the declaration; and issue was joined. Before this plea was filed, the death of Virginia Fulton and James H. Rector were suggested and the suit was revived as to Virginia Fulton in the name of her heirs Hattie L. Fulton, James S. Fulton and Wm. E. Brooks, her heirs at law, and they being infants the suit as to them was revived and directed to proceed in their name by their next friend, Thomas Rector, and was so to proceed in their name and in that of the other plaintiffs except James H. Rector, who had died, and as to whom the suit abated. An order of survey was also ordered on motion of the defendant.

On November 27, 1882, the case was tried on the issue joined in the plea of not guilty by a jury, who found the following verdict:

"We, the jury, find for the plaintiffs and against the defendant the premises in the within declaration specified and described, and that at the commencement of this action the said plaintiffs had the right to the possession thereof, and that the said defendant was in possession of said premises at the commencement of this action, and unlawfully withholds the possession thereof from the plaintiffs. We further find that the plaintiffs have an estate in fee simple in said premises, subject, however, to an estate by the courtesy of James J. Fulton, the husband of said Virginia Fulton, in the undivided one fifth interest of said premises. We also find one cent damages for the plaintiffs for the detention of said premises."

On motion of the defendant the judgment in this verdict was suspended; and on December 30, 1882, the court on this verdict entered the following judgment:

"And now, at this day, to-wit: At a circuit court continued and held for Wood county, at the court-house thereof, on December 30, 1882, this day came again the parties, by their attorneys, and the motion of the defendant to set aside the verdict of the jury rendered in this case and to grant him

a new trial, being argued by counsel and considered by the court, is overruled. It is therefore considered by the court that the plaintiffs do recover against the defendant the possession of the premises in the plaintiffs' declaration in this case specified, according to the verdict of the jury, together with one cent damages, as assessed by the jury, and the costs by the plaintiffs about their suit in this behalf expended, and on motion of the plaintiffs it is ordered that a writ of *habere facias possessionem* do issue, directed to the sheriff of this county, to cause the said plaintiffs to have possession of the premises aforesaid. And on motion of the defendant, by counsel, it is ordered that proceedings be stayed upon this judgment for the period of thirty days to enable him to apply to the Supreme Court of Appeals for a writ of error and *supersedeas*, upon his filing bond, with good security, before the clerk of this court in a penalty of one hundred dollars, conditioned according to law."

The evidence in the trial of the case appears from the bills of exception to have been on the part of the plaintiffs that Joshua Johnson, the defendant, conveyed the tract of land in the declaration mentioned to one M. P. Amiss as trustee to secure a debt of seven hundred dollars to one John D. Timms, the tracts to be conveyed by section 6, chaper 117 of Code of Virginia. This deed of trust was dated September 8, 1864, and was duly recorded the same day. M. P. Amiss, trustee, sold this tract of land under this deed of trust and conveyed it to James Hiett, the ancestor of the plaintiffs. This deed was as follows:

"This deed, made the 6th day of May, 1879, between M. P. Amiss, trustee, of the first part, and James Hiett, of the second part:

"Whereas, the said trustee, by virtue of the authority vested in him by the deed of trust hereinafter mentioned, did sell, as required by law, a certain tract of land situate in the county of Wood, State of West Virginia, conveyed by Joshua Johnson to the said M. P. Amiss by deed bearing date the 8th day of September, 1864, and recorded in deed book No. 22, page 366, in the office of the county court clerk's office of Wood county, West Virginia, and bounded and described therein as follows, to-wit, being and lying in

the county of Wood, containing three hundred acres of land on which the said Johnson now resides, adjoining the lands of Thomas Harkins, now Stone, Hiett and others, and being the same tract of land conveyed to the said Joshua Johnson by deed from Wm. Johnson and wife, bearing date January 1, 1847, and recorded in deed book No. 14, page 170, in said clerk's office, and situated on Briscoe run, Wood county, West Virginia," (here follows a description of the land by metes and bounds and then the deed proceeds as follows:) "containing three hundred acres, more or less, at which sale the said James Hiett became the purchaser for the sum of two thousand seven hundred dollars; one thousand and fifty-three dollars applied to the payment of the said trust and one thousand six hundred and forty-seven dollars the residue of the purchase-money, applied as credit on trust-deed in favor of said James Hiett given by said Johnson to Thomas Rector, trustee, and of record in the clerk's office, of Wood county, West Virginia. Now, therefore, this deed witnesseth, that the said trustee hereby conveys and grants to said James Hiett the said real estate hereinbefore described, with all the right, title and interest held by the said Joshua Johnson therein—to have and to hold the said real estate and premises unto said James Hiett, his heirs and assigns forever.

"Witness the following signature and seal.

"M. P. AMISS, *Trustee.* [SEAL.]"

This deed was duly recorded the day it bore date. The plaintiffs proved that when this suit was instituted the defendant, Joshua Johnson, was in possession of this tract of land and had been ever since September 8, 1864, when he executed the deed of trust; that none of the plaintiffs ever were in actual possession of said tract of land; that Virginia Fulton, who had died since the institution of the suit, was never in actual possession of the land; that James Hiett, the purchaser of the land, to whom this deed was made, departed this life shortly before the institution of the suit and left as his only lawful heirs the several plaintiffs named in the declaration. He left a will but did not by it devise this tract of land; that Virginia Fulton, one of the plaintiffs, who died since this suit was instituted, left a husband, J. J. Fulton,

who still survives, and the three heirs her children and grand-child, in whose name this suit had been revived, they being all infants; that the plaintiff, Willie E. Brooks, was her grand-child, the only child of a deceased daughter of said Virginia Fulton, who died about ten years ago and before the death of her mother, Virginia Fulton, and that the husband of said- deceased daughter and the father of said Willie E. Brooks, to-wit, William Brooks, was still living. The plaintiffs also proved that the defendant was in possession of this land when this suit was instituted and still continued in possession of it.

The defendant, Joshua Johnson, proved that on August 12, 1879, James Hiett, who had purchased said land of the trustee, M. P. Amiss, and had a deed for the same, re-conveyed it to M. P. Amiss. This deed of re-conveyance was as follows:

"JAMES HIETT
        TO
"M. P. AMISS, trustee.

"This deed, made this 12th day of August, 1879, between James Hiett, party of the first part, and M. P. Amiss, trustee, party of the second part, all of the county of Wood, State of West Virginia:

"Whereas, the said M. P. Amiss, trustee, by virtue of a deed of trust excuted by Joshua Johnson to him, bearing date September the 8th, 1864, and of record in the· clerk's office of Wood county court in deed book No. 22, page 366, conveying to the said trustee a certain tract of three hundred acres of land lying and being in the county of Wood, in trust to secure the payment of seven hundred dollars to John D. Timms, evidenced by a single bill executed by said Joshua Johnson and more fully described in said trust-deed, and James R. Timms, executor of the said John D. Timms, deceased, having directed said trustee, M. P. Amiss, to make sale of the said tract of land in said trust-deed mentioned, and in pursuance of said requirements of said Timms, the said M. P. Amiss, trustee, did advertise the said tract of land for sale in the *Parkersburg Sentinel,* a weekly newspaper published in the city of Parkersburg, Wood county, West Virginia, sale to be made on the 30th day of April,

1879, at the front door of the court-house of said Wood county, West Virginia, at public auction for cash, and a like notice posted on the front door of the Wood county court house, and by request of said Joshua Johnson and consent of said James R. Timms, executor, &c., the said sale was adjourned to two o'clock p. m., Tuesday, May 6, 1879, and on the said day of May 6, 1879, at two o'clock p. m., at the front door of said court house, M. P. Amiss, trustee aforesaid, made sale of said tract of land, at which sale the said James Hiett became the purchaser at the sum of two thousand seven hundred dollars. One thousand and fifty-three dollars, part of the purchase-money paid by said Hiett and applied by the trustee to the payment of the Timms trust, &c., and the residue, one thousand six hundred and forty-seven dollars, applied as a credit on trust-deed in favor of said James Hiett given by said Joshua Johnson to Thomas Rector, trustee, and of record in the clerk's office of Wood county court, and the said trustee, M. P. Amiss, on the 6th day of May, 1879, made, executed, acknowledged and delivered a deed of conveyance of the aforesaid tract of land to the said James Hiett, the same of record in the county court clerk's office of Wood county, West Virginia, in deed book No. 40, page 369, and since the sale aforesaid, to-wit, on the 29th day of May, 1879, the said James Hiett demanded of said Joshua Johnson possession of the land purchased as aforesaid. He refused to give possession, alleging that the trustee did not make due advertisement of the sale in pursuance of the deed of trust aforesaid in this, that no notice of said sale was posted on or near his premises, and no copy of said notice was served on him prior to the said sale, and the said James Hiett, in consideration of the foregoing premises, and to avoid further litigation, is willing to re-convey to M. P. Amiss, trustee aforesaid, all his right, title and interest to the said tract of land as vested in him by said deed of conveyance from said trustee, and that said trustee may be restored to all the rights and remedies vested in him by virtue of the said deed of trust as fully as if no sale had been made: Now therefore this deed witnesseth, that the said James Hiett doth grant and convey unto the said M. P. Amiss, trustee, all his right, title and interest in and to the following real estate as vested

in him by virtue of his purchase under said deed of trust (but no further), to-wit, all of a certain tract of land lying and being in the county of Wood, West Virginia, containing three hundred acres, more or less, being the same tract of land conveyed by the said Joshua Johnson to said M. P. Amiss, trustee, as per deed of trust above mentioned, and the same conveyed by said trustee, M. P. Amiss, to said James Hiett as before mentioned, and bounded and described in said last mentioned deed—to have and to hold the said real estate and premises unto the said M. P. Amiss, trustee, as fully and completely as if no sale had been made under the trust-deed of said Joshua Johnson to the said M. P. Amiss, trustee, to-wit, trust-deed above referred to bearing date September 8, 1864, and of record in the clerk's office of Wood county court, West Virginia, in deed book No. 22, page 366.

"Witness the following signature and seal.

"James Hiett. [seal.]"

This deed was duly recorded the day it bears date.

To rebut this evidence of the defendant, the plaintiff offered in evidence another deed from M. P. Amiss to the plaintiff's ancestor, James Hiett, which was dated October 6, 1879. This deed recited that the trustee after advertising the time, terms and place of sale, as required by law, did on the 26th day of September, 1879, at the front door of the county court-house of Wood county sell at public auction for cash the tract of land described in the deed of September 8, 1864, which we heretofore referred to, it being the same tract conveyed by M. P. Amiss, trustee, by deed dated May 6, 1876, and reconveyed by James Hiett to M. P. Amiss, trustee, by deed of August 12, 1879, and then proceeds: "At which sale made on the 26th day of September, 1879, aforesaid the said James Hiett became the purchaser thereof. It then set out the payment of the purchase-money to the trustee and its legitimate disposition and concludes thus: Now, therefore, this deed witnesseth, that the said trustee hereby conveys and grants to the said James Hiett the said real estate hereinbefore described, with all the right, title and interest held by the said Joshua Johnson therein,—to have and to hold the said real estate and premises unto the said James Hiett, his heirs and assigns forever.

"Witness the following signatures and seal.

"M. P. Amiss, *Trustee.* [seal.]"

This deed was duly recorded the day it bears date.

To the giving by the plaintiff in evidence of this deed of May 6, 1879, whereby the trustee conveys this tract of land to James Hiett, the ancestor of the plaintiff, the defendant "objected on the ground that no evidence had been offered to prove that the said M. P. Amiss had advertised the sale of the land under said deed of trust, as required by law, or that he had conducted or made said sale according to the terms of said deed of trust, which objection, being argued by counsel and considered by the court, was overruled, and said deed from Amiss, trustee, to Hiett was permitted to go in evidence to the jury; to which opinion of the court overruling said objection and permitting said last mentioned deed to be given in evidence, the said defendant, by his counsel, excepted, and asks that this his bill of exceptions may be signed, sealed and saved to him and made a part of the record in the cause, which is accordingly done."

This was the defendant's first bill of exceptions. When the plaintiffs by way of rebutting the defendant's evidence offered in evidence the second deed from M. P. Amiss, trustee to James Hiett the defendant objected to its going to the jury "on the ground that there was no authority vested in the said M. P. Amiss, trustee, to make a second sale under the deed of trust from Johnson to him as trustee; that the first sale and deed made in pursuance thereof had divested the said trustee of his authority, and that the said second sale and deed made in pursuance thereof were void and a nullity, and said deed passed no title by virtue of said second sale; which objection being argued by counsel and considered by the court, was overruled, and the said second deed from Amiss, trustee, to Hiett was permitted to go in evidence to the jury, to which opinion of the court overruling said objection and permitting said last mentioned deed to be given in evidence to the jury, the defendant, by his counsel, excepted, and asked that this his bill of exceptions may be signed, sealed and saved to him and made a part of the record in the cause, which is accordingly done."

This constituted the defendant's second bill of exceptions.

When all the evidence had been submitted to the jury the defendant moved the court "to exclude the evidence adduced on the part of the plaintiff from the jury, on the ground that it had been shown by the evidence that J. J. Fulton and William Brooks were necessary parties plaintiffs to this suit, and that there was an outstanding title and estate in them to an interest in said land in the declaration mentioned, and because the plaintiffs' evidence was insufficient; which motion being argued by counsel and considered by the court, was overruled, and the evidence aforesaid was permitted to stand before the jury; to which opinion of the court overruling said motion to exclude the evidence, the defendant, by his counsel, excepted, and asks that this his bill of exceptions may be signed, sealed and saved to him and made a part of the record in the cause, which is accordingly done."

This constituted the defendant's third bill of exceptions.

The fourth bill of exceptions was because of the refusal of the court to award a new trial, because improper evidence had been permitted to go to the jury; because F. F. Fulton was a necessary party plaintiff to the suit; because the verdict was not in accordance with the facts proven, all of which were certified and are as above stated; and because the verdict was contrary to the law.

To the judgment of the court entered on this verdict on December 30, 1882, the defendant, Joshua Johnson, has obtained a writ of error and *supersedeas.*

*John A. Hutchinson* and *David D. Johnson* for plaintiff in error.

*D. H. Leonard* and *W. L. Cole* for defendants in error.

GREEN, JUDGE:

The first error assigned in the argument of the counsel for the plaintiff in error is, that the husbands of the female plaintiffs, who were heirs of James Hiett, deceased, were necessary parties to this suit; and they not having been made parties, the plaintiffs were not entitled to recover. The plaintiffs under the declaration claim the tract of land in controversy jointly against the defendant; and they cannot recover, unless

they show, that they had a joint right to the possession, which, the evidence discloses, they did not have at the time of the commencement of the action, as the husbands of the female plaintiffs had a present right to the possession of the property and were not made parties. J. J. Fulton for instance was not made a party plaintiff, yet he had a present right to the possession of the property in common with the other plaintiffs, if any of them had such, because he was the husband of Virginia Fulton, one of the plaintiffs.

Numerous authorities are referred to by counsel to sustain this position; but there is no necessity to look beyond the express provisions of our statute-law to determine, who should have been plaintiffs in this action. Section 4 of chapter 90 of the Code of West Virginia p. 518 provides: "No person shall bring such action, unless he has at the time of commencing it a subsisting interest in the premises claimed and a right to recover the same, or to recover the possession thereof, or some share, interest or portion thereof." Section 23 of said chapter p. 520 provides: "If the jury be of opinion for the plaintiffs, *or any of them*, the verdict shall be for the plaintiffs or such of them as appear to have a right to the possession of the premises or any part thereof." It is obvious therefore, that though the plaintiffs claim in the declaration the tract of land jointly against the defendant, and the evidence shows that they are not all entitled to the possession jointly, yet a verdict and judgment may be rendered for such as appear to have a right to the possession of the tract or any part thereof. It is equally obvious, that while more may be joined in the declaration as plaintiffs than are shown by the evidence to have any interest in the land claimed without vitiating the suit, so some of the parties entitled to the joint possession of the land claimed may be omitted in the declaration without vitiating the suit. For section 25 of said chapter p. 520, 521 provides: "When the right of the plaintiff is proved to all the premises claimed, the verdict shall be for the premises generally, as specified in the declaration; but if it be proved to only a part or share of the premises, the verdict shall specify such part particularly as the same is proved." So that a declaration may claim the whole of the premises in fee, and yet the verdict and judg-

ment may be for an undivided moiety, though the party owning the other undivided moiety was not made a co-plaintiff as he might have been.

In this case all the parties plaintiff were just those who upon the evidence ought to have been plaintiffs; and no one else would have been properly parties plaintiff. It is true that if either fewer or more persons had been made parties plaintiff, it would not have been a fatal error; but it would have necessitated a special verdict designating who were entitled to recover and the part they were entitled to recover, while it would have been of no possible advantage but a simple embarassment in the prosecution of the suit. It was claimed by the plaintiffs, that they were all the heirs of James Hiett; that at the time of his death he owned this land in fee simple and was entitled to the possession of it; and that on his death it descended to all the plaintiffs, male and female, and that therefore they were entitled to the possession of the land against the defendant, Joshua Johnson, who unlawfully held possession of the same; and this was proven by the evidence. The evidence also showed that none but the plaintiffs in this action had any subsisting interest in the premises claimed or any right to recover the same, or to recover the possession thereof. The earliest period, when their ancestor James Hiett had any claim to this land, was May 6, 1879; and he died between that and December 30, 1882, when this suit was instituted. This land, if he had a good claim to it, descended to all his heirs. Some of them were females and married; and it is claimed, that their husbands had an interest in and a present right to the possession of this land and ought to have been joined with their wives and the other heirs as co-plaintiffs. But it is obvious, that their husbands "had no subsisting interest in the premises or any right to recover the same or to recover the possession thereof or any share, interest, or portion thereof;" and therefore they ought not to have been made co-plaintiffs. Section 3 of chap. 66 of the Code of W. Va., p. 448, provides: "Any married woman may take by inheritance from any person other than her husband and hold for her sole and separate use real property and any interest therein." The premises claimed in this action, if the plain-

tiffs have any right thereto, descended to them from their ancestor, James Hiett, who died after this Code went into effect; and therefore the female heirs of James Hiett inherited their interest in the tract of land claimed as their sole and separate property; and of course their husbands had no sort of interest in the land claimed in this action nor any right to the possession thereof; and they were therefore very properly not made co-plaintiffs in the action.

The next error in this case, as claimed by the counsel for the plaintiff in error, is that upon the death of Virginia Fulton, one of the female plaintiffs, being suggested her surviving husband, J. J. Fulton, ought to have been made a party plaintiff, because he became tenant by courtesy in her interest; and they assert that *seizin in fact*, actual possession by the wife in her lifetime, was not necessary to make him tenant by courtesy. They refer to no authority to sustain this position except section 15 of chapter 65 of the Code of West Virginia, page 445. Now this section of our Code has been interpreted by this Court. In *Winkler* v. *Winkler's Ex'or* 18 W. Va. 455, this Court decided: "Section 15 of chapter 65 of the Code of 1868, as amended by section 2 of chapter 207 of the Acts of 1872–3 which provides: 'If a married woman die seized of an estate of inheritance in lands, her husband shall be tenant by the courtesy in the same' does not dispense with any of the four common law requisites of courtesy: marriage, seizin of the wife, issue born alive and death of the wife, but is only declaratory of the common law. The only real question of doubt in that case was whether the statute did not dispense with issue born alive. After mature deliberation this Court decided it did not. Much more obviously it does not dispense with *seizin of the wife*. Nor does it in any manner change the character of this seizin. It is, as this Court decided, merely declaratory of the common law. And by the common law, as admitted by all, the seizin of the wife, necessary to give the husband a right after her death to courtesy, was a seizin not in law but a seizin in fact, that is, possession of the land by the wife.

In this case the proof shows, that none of the female plaintiffs, who were married, ever had any possession of this

tract of land; but that from the time their claim to it arose by the death of their ancestor, James Hiett, the defendant Joshua Johnson held *adversary* possession of it. Of course therefore on the death of Virginia Fulton this case ought not to have been revived in the name of her husband as one of the co-plaintiffs, as he had no interest in the land as tenant by courtesy.

The next assignment of error in the argument of the plaintiffs' counsel is, that the deeds from M. P. Amiss, trustee, to James Hiett, the ancestor of the plaintiff, the one dated May 6, 1879, and the other dated October 6, 1879, should have been accompanied by proof, that the sale had been made in accordance with the terms and conditions of the deed of trust; and they should not have been allowed to go to the jury without such accompanying proof. "There is," say counsel, "no presumption in favor of the regularity of the sale;" and they cite *Pollard* v. *Baylor*, 4 H. & M. 223; *Ross* v. *Norvell*, 3 Munf. 170; *Gibson* v. *Jones*, 5 Leigh 370.

These Virginia authorities have been considered by this Court, some of them on more than one occasion. The conclusion reached by this Court is, that after a trustee has made a deed to the purchaser, and it has been recorded, it will be presumed, that it was made in accordance with the terms and conditions of the deed of trust, and that it was properly advertised. See *Burke & Keatley* v. *Wm. Adair, Jr., et al.*, 23 W. Va. 139. In that case the suit was brought in equity by the grantor or one claiming under him to set aside the sale by the trustee and the deed to the purchaser, because the tract of land was not advertised in the manner specified in the deed of trust. It was held, that in such a case the presumption, that the land was properly advertised, arising simply from the making of the deed and its recordation might be rebutted by some proof to the contrary. But I must be here permitted to express my doubts, whether in a court of law on the question, whether such a deed executed by a trustee did convey the legal title to the land to the purchaser, any proof would be allowed to be produced to show that the land had not been properly advertised before the sale as required by the deed of trust; for I have my doubts whether the failure to advertise the land, as required by the

deed of trust, would prevent the deed from the trustee passing the legal title to the purchaser, though it might be good ground for setting aside the deed in a court of equity. . But on this point I express no positive opinion, as it does not arise in this case, and it is an important question, which should perhaps be well considered, when it properly arises. In this case it does not arise, as there was no evidence introduced by the defendant to rebut the presumption, that the land was properly advertised, as required by the deed of trust, which arose from the deeds to the purchaser and their recordation.

The fourth error urged by the counsel for the plaintiff in error is, that the court erred in admitting the deed of October 6, 1879. "It," say the counsel, "was made without authority and conferred no title on James Hiett. The power of Amiss as trustee had by the former sale and conveyance of May 6, 1879, been fully exercised and exhausted. The debt secured under the trust-deed had been paid off and discharged as appears by the deed of May 6, 1879. The trust had been satisfied and the functions of the trustee performed. If there had been any mistake or failure on the part of the trustee to properly execute the deed of trust the only remedy was by applying in a proper manner to a court of equity for relief." To sustain these positions the counsel for the plaintiffs in error refer to *Stover* v. *Wood*, 26 N. J. Eq. 417; *Fussett* v. *Smith*, 23 N. Y. 252; *Hollenbach* v. *Shoyer*, 16 Wis. 525; Jones on Mortgages, sec. 966–969. The counsel for the plaintiffs in error present these further views on this point: "The trustee by his first conveyance parted with the legal title conferred on him by the grantor, Johnson, by the original deed of trust. By the conveyance of August 12, 1879, James Hiett undertook to reinvest Amiss, the trustee, with the title and power he had formerly possessed under the deed of trust from Johnson. Neither one nor both, Amiss and Hiett, could make a new contract or change the terms of the deed of trust for the grantor, Johnson, without his consent." To support these views he refers to *Huckabee* v. *Billingsly*, 16 Ala. 417; *Salisbury* v. *Bigelow*, 20 Pick. 180; *Herbert* v. *Hanrick*, 16 Ala. 581; *Gary* v. *Colgin*, 11 Ala. 514; *Prouty* v. *Edgar*, 6 Iowa 353. The counsel conclude what they have to say on this subject thus: "The *cestui que*

*trust* had been satisfied, the debt paid by the former sale; and a cancellation of that sale, and a reconveyance to the trustee, Amiss, could not be made certainly without the money being refunded, and the consent of both Johnson, the grantor, and the *cestui que trust* being given. *Penny* v. *Cook, &c.*, 19 Iowa 538." They conclude as follows: "The deed of October 6, 1879, conveyed if anything only such title as had been conferred on Amiss, trustee, by the grantor, Johnson, *and not* such as had been conferred on Amiss by Hiett. It was therefore shown that the title was still in Amiss under the deed which Hiett made to him August 12, 1879."

I have presented the views of the counsel for the plaintiffs in error on this last point at length with the authorities, on which they rely and in the language of the counsel, because I regard them as very ingenious, and I desire them to appear in the strongest form, in which they can be presented.

I will review briefly the authorities, which they rely on to sustain these views, that we may fairly judge how far the authorities do support them.

The case of *Storer, Administrator,* v. *Wood,* 26 N. J. Eq. 417, was a suit brought by Stover in a court of equity to set aside the cancellation of two mortgages on the lands of some of the defendants, on the ground that these mortgages had been cancelled on certain bonds being given to the plaintiff, which were fraudulently represented to be good, when in fact they were worthless. The court declared null this cancellation of these mortgages and re-established the mortgages as liens on the land, just as though they had not been cancelled, so far and so far only as the parties to the suit were concerned; but persons not parties to the suit, in whose hands the land was not chargeable with the consequences of this suit, were not to be affected by the decree re-establishing the mortgages. This action of the court seems to me to have been right.

*Fassett* v. *Smith,* 23 N. Y. 253, was a suit similar to the New Jersey case just referred to. The court was divided in opinion as to whether a court of equity in that case should set aside the satisfaction of the mortgage and reinstate it as a lien, on the ground that the satisfaction entered had been

procured from the plaintiffs, the mortgagees, by the gross fraud of the mortgager, one of the defendants. The question in dispute in the case was, whether after the cancellation of the mortgage the lands had not gone into the hands of a *bona fide* purchaser for value without notice. The court refused to re-establish the mortgage on this account. The case of *Hollenback* v. *Shoyer*, 16 Wis. 525, was also a suit in equity to set aside the satisfaction of a mortgage because of fraud in its procurement. This case throws no additional light on the subject, nor do the sections in Jones on Mortgages referred to by counsel.

The decision in *Huckabee* v. *Billingly*, 16 Ala. 414, was "that where a trustee in a deed executed for the benefit of creditors quit-claims to the grantors all his right, title and interest in the trust-estate, the latter is thereby reinvested with the legal title, and a subsequent sale of it by the trustee under the deed conveys no such title to the purchaser as will sustain an action of trespass to try titles." In that case the trustee executed a quit-claim deed to the grantor in violation of the conditions of the deed of trust, as only the creditor, who was first secured, had been paid his debt, and the debts of others also secured by the deed of trust had not been paid. This case gives countenance to the view, that a deed from the trustee, who holds the legal title, though made in violation of the conditions, upon which by the deed of trust he was directed to make a deed, nevertheless carries the legal title, and the redress to those wronged by such conveyance is only in a court of equity.

If this be so, it is obvious in this case, that the ancestors of the plaintiff had the legal title to the land, which they claimed; for the trustee's deed conveyed the legal title to James Hiett by the deed of May 6, 1879. And James Hiett's deed of August 12, 1879, conveyed the legal title again to the trustee M. P. Amiss and his deed of October 6, 1879, again conveyed the legal title to this tract of land to James Hiett; and a court of law will not permit any enquiry as to whether any of these deeds conveying the legal title were improperly executed in violation of any duty imposed on the grantor or any conditions in the deed to him. It is however unnecessary for us to decide whether this is a correct legal view or

not; and as it involves an important legal question I.express now no decided opinion about its correctness, as I deem it unnecessary to decide this point in this case.

In *Herbert* v. *Hanrick*, 16 Ala. 599 the court said: "The legal title to the premises being in the trustee, and he having conveyed to the defendant in error, it is not for a stranger to the deed to object, that the sale was not made in conformity to the power conferred by the deed. See *Brown* v. *Lipscomb*, 9 Port. R. 472; *Gary* v. *Colgin*, 11 Ala. 511, 519; *Foster* v. *Goree*, 5 Ala. 421." This conclusion is correctly drawn from the cases referred to, one of which is a case relied upon by the counsel for the plaintiff in error. The inference to be drawn from these cases is, that if property conveyed by a trust-deed is sold by the trustee in a manner different from that directed by the deed, and a conveyance of the property is made to the purchaser, such conveyance is not valid but passes the legal title to the purchaser. This position is fatal to the plaintiff in error; but as it is unnecessary in this case, I do not propose to express any direct opinion as to whether these views of the Alabama courts are sound. It must however be observed that deeds of trust similar to those in use in Virginia and West Virginia are in use in Alabama, while in most of the States they are not in use.

In *Prouty* v. *Edgar*, 6 Ia. 374, it was laid down, that if an infant's trustee conveys land to a party, to whom it would have been his duty to convey, had he been of age, he can not avoid his conveyance because of his infancy, even though the legal title had been fraudulently cast upon him; for in conveying the land he did that only, which a court of equity would have compelled him to do, and which if disaffirmed, he would be compelled to do again. In Iowa the statute-law provides, that in actions of ejectment the defendant may answer and set forth in his answer as many causes of defence legal or *equitable* as he has. In an action of ejectment in the case of *Penny* v. *Cook*, 19 Ia. 538, the answer set up that the plaintiff was a *cestui que trust* in a deed of trust, and though all the debts secured by the deed of trust had been paid, the trustee had sold the real estate claimed by the plaintiff, and he had bought the land at the sale, and a deed conveying it had been made by the trustee to defraud the de-

fendant. There was a demurrer to this answer, which the court below sustained, and this decision was reversed by the appellate court. It seems to be obvious that this answer set up what, if it was not a legal defence, was most clearly a good equitable defence and such a defence was allowed by the statute-law of Iowa. As a matter of course, it seems to me, the appellate court was bound to reverse this decision. But Judge Dillon in pronouncing the opinion of the court seems to have gone further than was necessary to decide that case. He says pp. 541, 542:

"One allegation in the answer is that the debt secured by the deed of trust had been *fully paid* prior to the sale by the trustee. The demurrer admitted the truth of this allegation. If true the sale by the trustee was wholly void; certainly so as between trustee and beneficiary when the latter purchases. The reason may be briefly stated; the trustee derived his sole power to sell from the deed. It follows that a valid subsisting power is necessary, and lies at the very foundation of the purchaser's title. Payment in full of the debts renders the trust-deed *functus* officio and *ipso facto* extinguished the power of sale. *Cameron* v. *Irwin*, 5 Hill (N. Y.) 272; *Id.* 246; 2 *Id.* 566; 21 Mo. 320; *Ledyard* v. *Chapin*, 6 Port (Ind.) 320; *Sherman* v. *Sherman*, 3 *Id.* 337; *Wade* v. *Harper*, 3 Yerg. 383; 2 Am. Law Reg. (U. S.) 712 § 23 and authorities cited. No reason is perceived why this if this is true, would not be a good defence even at law. Indisputably it is ground to set aside and annul the sale. Most manifestly so when, as in the case at bar, no intervening right of third parties had attached."

If we regard this as good ground for setting aside the deed, as it clearly was in a court of equity, it was rendered by the Iowa statute a good legal defence. But independent of this statute according to the Alabama cases cited it would not have been a good legal defence, though it would have been good ground in a court of equity to set aside the deed made to a purchaser. For reasons, which I have stated, I shall in this case decline to consider whether or not such a defence independent of statute-law would have been a good defence at law. It may be, that if the debts secured by the deed of trust had all been paid, a sale after that by the

trustee and a conveyance might not pass the legal title; but it seems to me clear, that those, who assert that the debts had all been paid before the sale by the trustee, would have to prove this at the trial, for the presumption would be that they remained unpaid. See *Graham* v. *Anderson et al.*, 42 Ill. 517. And where the defect in the deed from the trustee consists in the fact that the conditions of the trust-deed had not been complied with, or for instance that it had not been properly advertised, it would seem that the trustee's deed would nevertheless pass the legal title. See *Reece* v. *Allen*, 5 Gilman, (Ill. R.) p. 240; *Harris* v. *Harris*, 6 Munf. 367; *Dawson* v. *Hayden*, 67 Ill. 52 and *Taylor* v. *King*, 6 Munf. 358. The two last cases appear to lay down this doctrine broadly and strongly.

Now to apply the law deducible from these cases. It would seem without any enquiry into the question, whether the terms and conditions expressed or implied in the deeds as to the power of sale were or were not complied with, and even if they had been expressly shown not to have been complied with, that deed from M. P. Amiss, trustee, of date May 6, 1879, conveyed the legal title to the tract of land claimed to James Hiett; and that on his death it descended to the plaintiffs, his heirs; and that they were entitled to recover the land in fee of the defendant Joshua Johnson. But as there has been some controversy over the question, whether, when it appears that a trustee has conveyed a tract of land without complying with the conditions of sale in reference to the advertisement of the tract of land or any other conditions, his sale and deed would convey a legal title, I prefer not to base the decision in this case on the above ground, though it does seem to me to be a safe and proper ground.

If we assume that the counsel for the plaintiff is right in his assertion, that this deed of May 6, 1879, was null and void and did not pass the legal title to James Hiett, because the tract of land had not been advertised, as required by the deed of trust, then it must follow as a matter of-course, that the deed from James Hiett to M. P. Amiss, trustee, of August 12, 1879, was also null and void, as it conveyed to said Amiss, trustee, "the real estate vested in him by virtue of his purchase under said deed of trust (but no further)."

Now as we have assumed, that he acquired no title legal or equitable, this deed of course conveyed no title of any sort. but was a mere nullity.    And both these deeds being nullities, of course the deed of trust by Joshua Johnson to M. P. Amiss, trustee, dated September 8, 1864, remained wholly unexecuted, and on the request of the owner of the debt the trustee, M. P. Amiss, was bound to execute this deed of trust by a public sale of this tract of land.    But it is said, that the *cestui que trust* had been fully paid off by the trustee, M. P. Amiss, out of the money received by him of James Hiett the purchaser at the first sale.    Such a payment did not extinguish this debt but merely transferred it to this purchaser, James Hiett.    See *Brobst* v. *Brock*, 10 Wall. 533; *Wyman et als.* v. *Hooper*, 2 Gray 146; *Brown* v. *Smith et al.*, 116 Mass. 108; *Jackson* v. *Bowen*, 7 Cow. 13; *Robinson* v. *Ryan et at.*, 25 N. Y. 320.    The cases, referred to by the counsel of the plaintiffs in error, of a mortgagee going into equity to re-establish his mortgage, when it had been cancelled or destroyed through the fraud of the mortgager, have no application to this case.    If the first sale and deed made by the trustee, Amiss, as insisted by the plaintiff in error, were absolutely void because of the omission of the required advertisement before the sale, then there could be nothing equivalent to a cancellation or destruction of the deed of trust given by Joshua Johnson to M. P. Amiss, trustee.    It was neither destroyed, nor had it been executed; but it remained in full force and could be executed by the trustee at any time without any application to a court of equity.    It was executed by the trustee, M. P. Amiss, and James Hiett became the purchaser, and this tract of land was regularly conveyed to him by the trustee, and his deed was duly recorded, and on his death it descended to the plaintiffs as his heirs, and they had a right to recover it of the defendant, Joshua Johnson, who unlawfully held possession of it.

We have in reaching this conclusion assumed, as claimed by the counsel of the plaintiff in error, that the deed of May 6, 1879, from Amiss, trustee, to James Hiett was void, because it appeared affirmatively that the tract of land had not been properly advertised by the trustee before the first sale.    The deed of trust of September 8, 1864, simply pro-

vided that reasonable notice of the time and place of sale should be given. It simply referred to section 6 of chapter 117 of the Code of Virginia as fixing the mode of advertisement, and that simply requires that reasonable notice of the time and place of sale should be given. If the defendants were allowed at all to prove in an action of ejectment in a court of law, that this reasonable notice had not been given, as a mode of disputing the validity of the deed made by the trustee to the purchaser, Hiett, of date May 6, 1879, the burden of offering such proof was certainly on them. They met this burden simply by introducing the deed of August 12, 1879, by Hiett to Amiss, trustee, which certainly did not show that reasonable notice of the time and place of sale had not been given, unless the recital in it should be regarded as furnishing such evidence. After the sale Joshua Johnson "refused to give possession of the land purchased as aforesaid. He refused to give possession alleging that the trustee did not make due advertisement of the sale in pursuance of said deed of trust, that no notice of said sale was posted on or near the premises and no copy of said notice was served on him, the grantor, prior to said sale." Now if we regard these allegations of Joshua Johnson to be true, they in no manner prove that reasonable notice of the time and place of said sale was not given. These things, which Joshua Johnson alleges were not done, were not required to be done by his deed of trust of September 8, 1864. It is true that in cases of deeds of trust executed after our Code of 1868 went into effect, if not otherwise provided in the deed of trust, this personal service of notice of sale on the grantor and this posting of the notice on or near the premises to be sold are required. See § 7 ch. 72 of Code of W. Va. p. 464. But this provision of the Code had no sort of reference to advertisements under deeds of trust executed prior to the time this Code went into effect, and therefore had no reference to this deed of trust given by Joshua Johnson some four years before the passage of this law.

Our conclusion therefore is that the deed of May 6, 1879, from M. P. Amiss, trustee, to James Hiett of the land claimed by the plaintiffs, his heirs, in this suit was good and valid and conveyed said land to him; that that being the case,

the deed of August 12, 1879, conveyed this land from James Hiett to M. P. Amiss, trustee; but that by this conveyance James Hiett and M. P. Amiss could not revive and put in force, as they attempted to do, the deed of trust of September 8, 1864, which had, as we have seen, been duly and legally carried into execution by a sale and conveyance by M. P. Amiss, which was regular and effective, and the trust imposed by this deed of trust could not by this deed of James Hiett be again revived and put in force by this deed executed by James Hiett. (*Huckabee* v. *Billingsly*, 16 Ala. 417). As therefore the purpose of James Hiett in making this deed of August 12, 1879, as well as the purpose of M. P. Amiss, trustee, in accepting it would not be legally carried out, it becomes the simple duty of M. P. Amiss, trustee, to re-convey this tract of land to James Hiett. This he did by the deed of October 6, 1879. It is true before so doing he went through the form of making another public sale of this tract of land, as if under the old deed of trust of September 8, 1864, from Joshua Johnson to him; and James Hiett went through the form of purchasing again this tract of land; but, as claimed by the counsel for the plaintiffs in error, he had no authority then to sell under this deed of trust from Joshua Johnson.

After reciting all these transactions this deed made October 6, 1879, concludes as follows: "Now therefore this deed witnesseth that the said trustee conveys and grants to the said James Hiett the said real estate hereinbefore described, with all the right, title and interest held by said Joshua Johnson therein, to have and to hold the said real estate and premises unto the said James Hiett his heirs and assigns forever." This, it is claimed by the counsel for the plaintiff in error, is a mere nullity, because the trustee, M. P. Amiss, had then no authority to convey the right, title and interest held by said Joshua Johnson therein. That is true; and it is moreover true that Joshua Johnson had then no right, title or interest in said tract of land and had not since May 6, 1879, when the first deed was made to the purchaser of this tract of land. But this deed purports to convey more than the right, title and interest of Joshua Johnson, it conveys and grants "to James Hiett the said real estate hereinbefore described to

have and to hold the said real estate and premises to the said James Hiett his heirs and assigns forever." The legal title to this real estate was then in M. P. Amiss, though the equitable title was in James Hiett as the recitals in this deed and in the deed of August 12, 1879, referred to in it on their face showed. Why then should we regard this deed as totally inoperative and void? The purpose of M. P. Amiss in executing it was obviously to invest James Hiett with the legal and equitable title to this tract of land; and though it is obvious, that the deed could not operate to do this in the manner he supposed it would, yet there was no difficulty in its operating to effect his purpose in a manner different from what he expected it to operate. He had a right, and it was his duty, to convey this tract of land to James Hiett. This he did; and we are asked to consider the act inoperative and void, because the recitals in the deed show, that Amiss did not as a legal question comprehend how this deed would operate to convey this land to James Hiett. It is always the duty of a court to give some effect, if possible, to every deed and contract; and it will never pronounce them null and void, unless they are so badly written as to render it impossible to give any effect to them. The operative part of this deed is clearly written and is worded technically in the manner most proper to convey to James Hiett a fee simple estate in this tract of land. The preamble of the deed shows, that it was the purpose of the grantor to make a conveyance which should so operate. How can this Court say it shall not so operate but shall be treated as an absolute nullity? In my judgment it did operate as it was intended to do, that is, to invest James Hiett with the legal and equitable title to the land claimed by the plaintiffs as his heirs, and they were entitled to recover it in fee of Joshua Johnson, who unlawfully withheld from them the possession.

I have now considered all the supposed errors committed by the court below as argued by the counsel of the plaintiffs in error; and I find that none of them has a good foundation. There was one error however appearing in the record. James J. Fulton had no interest whatever in this tract of land; he was not, for the reasons we have given, on the evidence appearing in this record tenant by courtesy in the

interest of his deceased wife in this tract of land, yet the jury found the following verdict:

"We, the jury, find for the plaintiffs and against the defendant the premises in the within declaration specified and described, and that at the commencement of the action the said plaintiffs had the right to the possession thereof, and that the said defendant was in possession of said premises at the commencement of this action, and unlawfully withholds the possession thereof from the plaintiffs. We further find that the plaintiffs have an estate in fee simple in said premises, subject however to an estate by the courtesy of James J. Fulton, the husband of said Virginia Fulton, in the undivided one fifth interest of said premises. We also find one cent damages for the plaintiffs, for the detention of said premises."

The judgment entered on December 30, 1882, must be affirmed, and the defendant in error must recover of the plaintiffs in error their costs in this court expended and thirty dollars damages.

AFFIRMED.